[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**



# FILED

AUG 04 2017 𝓃𝓫

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Parks, Lisa

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Speedy Title & Appraisal
Review Services, LLC
Kari Magedoff
Anthony Greer

_____

_____

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No: 1:16-cv-2103
(To be supplied by the Clerk of this Court)

**CHECK ONE ONLY:**          **AMENDED COMPLAINT**

_____   **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code** (state, county, or municipal defendants)

_____   **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code** (federal defendants)

  X       Unknown
**OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I.  **Plaintiff(s):**

A.  Name: _Lisa Parks_

B.  List all aliases: _____

C.  Prisoner identification number: _____

D.  Place of present confinement: _____

E.  Address: _7843 S. East End Avenue #2, Chicago, IL 60649_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.  Defendant: _Speedy Title & Appraisal Review Service, LLC_
Title: _Prior place of Employment_
Place of Employment: _Speedy Title & Appraisal Review Services, LLC_

B.  Defendant: _Kari Magedoff_
Title: _Human Resources Director_
Place of Employment: _Speedy Title & Appraisal Review Services, LLC_

C.  Defendant: _Anthony Greer_
Title: _Staff Appraiser Supervisor_
Place of Employment: _Speedy Title & Appraisal Review Services, LLC_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2                                                           Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: Parks V. Magedoff et al.
1:16-cv-2103

B. Approximate date of filing lawsuit: Received February 10, 2016;
Filed 2/16/2016

C. List all plaintiffs (if you had co-plaintiffs), including any aliases:
Lisa Parks

D. List all defendants: Speedy Title & Appraisal Review
Services, LLC
Kari Magedoff
Anthony Greer

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): United States District Court - Northern District of Illinois (Eastern Division)

F. Name of judge to whom case was assigned: Honorable Judge Robert M. Dow, JR.

G. Basic claim made: Civil - Retaliation Discrimination

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): The case is still pending.

I. Approximate date of disposition: There has been no final determination.

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**III.** List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: _UnknowN docket_
_Parks V Superior Bank_

B. Approximate date of filing lawsuit: _2001 (approximately)_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _____
_Lisa Parks_

D. List all defendants: _Superior Bank_

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _uncertain (district)_

F. Name of judge to whom case was assigned: _unKnown_

G. Basic claim made: _Personal injury_

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _I prevailed_

I. Approximate date of disposition: _unknown_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## IV. Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

Please See attached Narrative,

4

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Please see narrative attached.

5

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## V.    Relief:

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.

_See attached supplement_

VI.    The plaintiff demands that the case be tried by a jury.    ☐ YES    ☒ NO

### CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief.  I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ___4___ day of _August_, 20 _17_

_Lisa Parks_
(Signature of plaintiff or plaintiffs)

_Lisa Parks_
(Print name)

_____
(I.D. Number)

_7843 S. East End Avenue, Unit 2_
_Chicago, IL., 60649_
(Address)

Revised 9/2007
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

## Supplemental Pages for Amended Complaint August 4, 2017

**Corrections and clarifications to the original complaint to the Northern District Court of Illinois**

1. The Pro Se Litigant Amended Complaint form does not require facts to be provided in chronological order. The amended complaint is provided as required by the United States District Court's online form. The original complaint form question #13 did not require any specific separation of paragraphs. My term of employment at Speedy Title & Appraisal Review Services , LLC (STARS/Corelogic) was from June 4, 2012 until March 23, 2015. I was previously a licensed broker. I am still a licensed appraiser.

2. In July 2014, records show my Critical Error rating at 100%. It reflects the number of errors when inputting data (only numbers and narrative) for an appraisal review. Please see Exhibit E. These reports were sent once per month, after the effective month.

3. Although disagreements between the STARS department and other review appraisers existed, I was disciplined immediately, frequently and more severely for other's errors. Other employees told me they were not severely disciplined.

4. Mr. Brian Weaver of the Illinois Department of Financial and Professional Regulation (IDFPR) said I was not at fault. He said that STARS was misrepresenting me and actions fell

1 of 28

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

into the category of interference (See below under retaliation). He suggested that I look for a new job but did not state that I must immediately quit my job. He suggested that I continue to follow the appraisal guides.

5. STARS, took excessive deductions from employee's checks. I received a $300 refund. In June of 2014, a professional I hired indicated that the company was "double-dipping". Shortly after it was proven by e-mails from STARS employees stating that too much money was being deducted from paychecks. Other department employees also received refunds. During my search for new employment, I felt it necessary to maintain professionalism at work and confidentially search for employment. It was difficult because of the ongoing retaliation, harassment, increasingly hostile environment at STARS and other volatile, unsafe actions.

6. I am pleading for the court to please refer to this case as Parks v STARS et. al ( this reference will name the company first).

#### Qualifications

My Qualifications exceeded the 2012 job description. I am a State of Illinois Licensed Certified General Appraiser. During employment, I was also a Illinois licensed Real Estate Broker. I am working towards my Certified International Property Specialist Designation and have been a review appraiser for over 15 years. I have serviced reports ranging from two bedroom homes, to luxury homes, and commercial type properties. In many instances, I have been selected to be one of a small number of professionals from across the country to sit on appraisal review

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

panels. I have been a top producer at many firms. At STARS, I got along well with other

departments and employees. During 2012 and 2013, I was one of first and few to receive

Quality of Excellence Awards from STARS.

### Speedy Title & Appraisal Review Services, LLC and (Corelogic)

I worked for Speedy Title Appraisal Review Services, LLC from June 4, 2012 to March 23, 2015.

Per Federal Attorneys, Corelogic may have owned more than 50% of STARS and had influence

over STARS. The company may have also changed ownership. I, the Plaintiff and defendants

resided in different cities. I am the plaintiff, Lisa Parks, residing in Chicago, Illinois. I was a

telecommuter (home-based) while working at STARS/ Corelogic. I was hired as a Real Estate

Review Appraiser. W-2 forms show STARS is in Irvine, California. To the best of my

knowledge, Anthony Greer, the Appraisal Staff Supervisor, resided in Mount Laurel, New

Jersey. Kari Magedoff likely resided within working distance of the Mount Laurel STARS' office.

She was the Director of Human Resources. Rudy Dombrowski hired me and was the Staff

Appraisal Manager in 2012. He was soon promoted. Andrew Reisser became Senior Manager,

of the Review Appraisal Department (announced via meeting January 23, 2013). Anthony

Greer became my direct supervisor around that time. We all reported to both Dombrowski and

Reisser. Anthony Greer trained me along with two other review appraisers in June of 2012. He

was not a supervisor at that time. Greer and Kari Magedoff both worked out of the STARS

office in New Jersey. This case is to be heard in the Illinois Northern District Federal Court

based on Diversity of Citizenship, for the relief amount of $180,000 with the Court making

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

further determinations of relief, additional liabilities, additional protected actions and damage amounts. In my original complaint, I requested not to have a trial by jury. I will comment later as necessary. The defendant's adverse, retaliatory, discriminatory, unsafe actions and other violations caused me to leave my job. I had no choice after the Illinois Department of Financial and Professional Regulation suggested it. Any person would not have stayed under these circumstances. Each claim and support are detailed further down in this amended complaint.

## I am in a Protected Class

I am in a protected classes as a female and African American and further, as an appraiser. I follow the guides of licensed appraisers including the Uniform Standards of Professional Appraisal Practice (USPAP). Filing a complaint with the Equal Employment Opportunity Commission (EEOC) in December 2014 also placed me in a protected class. Filing was based on retaliation, race and sex. The original complaint against the defendants filed with the Illinois Northern District Court of Illinois on February 16, 2016 contains other forms of retaliation, discrimination (color, race, sex), failure to promote, failure to stop harassment, violations of FLSA, ERISA, overtime pay violations, equal pay/ Illinois Minimum Wage Law, creating a hostile, unsafe and adverse work environment. In addition, I have detailed actions which violate NJ "CEPA", violations of the Civil Rights Act of 1964, and 1866 including Section 1981. The Frank-Dodd Act, the Illinois Whistle Blower Act and Appraisal Independence Requirement violations are part of this complaint. It is also a law in New Jersey that a company must inform

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

employees of office closings; it applies in my case. I have included a Right To Sue Letter from
the EEOC which shows it was mailed to me on December 1, 2015.

**Protected actions**

Protected Actions include but are limited to filing charges with the Equal Employment
Opportunity Commission (EEOC), consulting attorneys, reporting to and inquiring of the Illinois
Department of Financial and Professional Regulations (IDFPR), discussions with the Illinois
Department of Labor (IDOL), the New Jersey Board of Real Estate Appraisers, and other
agencies. These agencies and professionals provided guidance to the public. Other protected
actions include questioning my supervisors about giving me more difficult assignments,
discussions with the STARS/ Corelogic Human Resources Department (HR), questioning my
supervisor about quality control (QC) procedures after being held accountable fo other's errors.
Additional protect activities include inquiries of wages and compensation when I began working
at STARS and resisting actions that would result in discrimination or violation of EEOC laws.
My employer was aware of my contact with IDFPR. The agency offered to help resolve issues.
Other employees had contacted their respective agencies, possibly more than once just as I
had. I talked with Mr. Weaver, the Appraisal Coordinator, at IDFPR several times.

**The Defendants Adverse Actions to deter engagement in a protected activity**

The severely adverse actions took place after I spoke to STARS supervisors and the IDFPR.
Adverse threatening actions and words damaged my reputation preventing promotion or

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

transfer to another job. Motive was to make sure that I did not ask questions of agencies or supervisors. Adverse actions drained me financially and demanded my valuable time making it difficult or me to seek legal assistance. The defendants did not like that I contacted the IDFPR as noted by STARS' supervisors by refusing allow assistance. On several occasions, Reisser and Greer told the entire department that we should contact state regulatory agencies if needed. IDFPR offered to participate in our telecom meeting. Supervisors got angry, used profanity and declined the invitation. This is against our USPAP guidelines and laws. I was threatened to prevent me from complying with IDFPR. Greer and Reisser threatened me referencing my salary and job security so that I would not cooperate with IDFPR.

### Causal Connection  (Connection between action and protected activity)

I had good attendance, got along well with employees, received awards,  and also received top annual performance evaluations in 2013. I had remaining days off at the end of each year. I promptly attended staff meetings attentively listening to topics. My performance evaluations dropped. STARS' disciplined me differently, more frequently and more severely than other employees. Many times, there was no reason for the type of disciplinary action taken. The retaliatory acts occurred in close timing to protected activities. I believe actions to also have been racially motivated and because I am a female. Many of my co-workers and superiors did not have the same level of experience as I did. A few decisions were reversed but with delays. The initial decision still had impact. My complaints and concerns about workload, retaliatory,

6 of 28

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

discriminatory, and unfair treatment possibly put pressure on Greer and Magedoff because their actions were against company policy. Their actions were inconsistent in many ways. I followed the STARS employee handbook but found supervisors' actions to be inconsistent with the STARS policies. I was threatened with a "difficult time" at work during the initial training in June of 2012 and other times by Greer. This happened after having been on the job less than a week. In 2014, STARS retaliated with verbal threats and disciplinary actions after discussions with IDFPR about record-keeping and a computer switch. Treatment towards me became more hostile. Others were treated better received compensation different from me. I asked co-workers. I had no choice but to leave my position. I could not refuse to look for other employment after IDFPR suggested it. EEOC representatives stated that some employees lose their jobs before the agency gets around to the case. I kept contact as matters got worse , actions towards me were hostile and the workplace grew unsafe. Greer took progressive steps to terminate me in 2014. I think I was the only African-American still working in the department. Adverse actions continued when I did not contribute to actions that were retaliatory or contribute to unfair and unallowed practices.

### 1. Wrongful Termination which under Title VII of the Civil Rights Act

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

1. I was forced to leave my position at STARS by suggestion of the Illinois Department of Financial and Professional Regulation because STARS supervisors refused to follow company policy and state enforcement policies. Company policy states that retaliation is not allowed, it is also illegal.

2. On July 28, 2014 at 2:24 p.m., via e-mail, I discussed contacting the IDFPR with the new Senior Manager of the Appraisal Review Department, Andy Reisser. On July 28, 2014, Reisser stated in an e-mail that I was underwriting not appraising. On or around July 31, 2014, Mr. Brian Weaver (Appraisal coordinator of IDFPR) clearly stated to me during a phone conversation that I was not an underwriter because I had no duties involving the actual loan on the properties. The State of Illinois enforces laws urging appraisal managers not to refuse to meet with the State. Reisser refused to allow him to meet or assist.

3. In 2012 during training in New Jersey manager Dombrowski told review appraisers that we did not have "access" which meant that we needed to keep our own copies of records. Weaver also said that because I was a licensed appraiser, responsibility to maintain records falls back on that fact. Further, rating appraisers' work helps classify my task as an appraisal review. If my company advertises my duties relating to files as an appraiser, that would mean that they possibly secured clients by using my license. The 2012 job advertisement says review appraiser and refers to a license.

4. Reisser insisted that his way of record keeping was correct. Weaver, Appraisal Coordinator at IDFPR told me to do it as prescribed in the Uniform Standards of Appraisal Practice

8 of 28

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103


(USPAP). Andrew Reisser became angry. I was verbally threatened during the meeting with supervisors Andrew Reisser and Anthony Greer. They denied that the top of the form said Appraisal Review Department. During the meeting, Andrew Reisser told me that I was hired as an underwriter and I was paid an underwriter's salary. He continued and stated that If I wanted to be a review appraiser, I should get another job. He said these two statements more than twice. He insisted that I agree and spoke in a voice louder than normal. Anthony Greer also made the same statements and insisted that I agree. They both denied that the form that I completed said it was from the Review Department or even said that it was an appraisal review. I made this statement to Mr. Brian Weaver.

5. On July 30, 2014, Supervisor Andrew Reisser sent me an e-mail saying that "it" may have misspoken and "out". The communication (e-mail) said, "It may have misspoken during out conversation. It is Advisory Opinions not FAQs." His terminology is important here. This was after threatening me in a meeting and telling me to get another job.

6. I told Weaver at IDFR about the meeting. IDFPR suggested that I begin looking for another job, Weaver said that I was not at fault and he would talk to my boss. Weaver said that STARS supervisors were misrepresenting me and interference was the other issue I was facing. He told me to continue to keep records as I previously had. A few days after my telephone conversations with the Illinois Department of Financial and Professional Regulation,

on August 6, 2014, I received a Corrective Action via e-mail from Greer. As part of the corrective action and my response, I attempted to call a number and see if I could file a formal

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

complaint or speak to someone else. The number did not work, I tried several times and asked STARS supervisor about the department.

7. The bottom of corrective action stated that I was not eligible for merit increases, promotions or transfers. These actions were retaliatory. As the end of each Corrective Action drew closer, I was written up or unfairly disciplined many ways. My position was at stake frequently.

8. During the time between the two Notices of Corrective Actions, I tried to maintain my position with STARS and keep any disciplinary actions at a minimum. The system was frequently down and took away from my personal off time. I also had additional responsibilities from the Corrective Action.

9.The second corrective action was e-mailed on December 29,2014. I immediately contacted attorneys. I started a formal EEOC complaint. In December of 2014 through March 2015, the surveillance and write- ups at work continued after I informed Human Resources Department.

10. I was not involved in the loan process at STARS. In 2012 and other years, STARS had a separate underwriting department. I worked in the Appraisal Department of Speedy Title & Appraisal Review Services, LLC. The job description ad of 2012 did not specify underwriting duties. Weaver said they usually refer to duties involving the loan, not an appraisal.

11. Near the end of August 2014, supervisor Reisser made comments to the appraisal department about misrepresentation and stated that our department needed to make more changes.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

12. Any person would reasonably seek other employment. Ongoing adverse actions affected my finances and personal time forcing me to resign.

13. STARS lost my paycheck on January 13, 2015 right before my vacation.

14. In 2015 Greer was sending unnecessary copies of work related e-mails to my personal e-mail account while I was at work (home-based). It made me feel unsafe; they were about staff meetings. I asked him to only send them to my STARS mailbox, but he refused. I asked again at a later time and he decreased the frequency but on March 17, 2015 at 12:45 p.m. one was sent that canceled a meeting **(See Exhibit I).** During my term of employment (2012 to 2015) technical support also often called me very near or during my lunch time to work on computer or system issues. Treatment towards me had become increasingly hostile since the first corrective action of August 2014.

15. My performance review dropped from among the top three evaluations in 2013 down to an average rating (Dec 2014) right before I resigned. The performance evaluation review commented on the corrective actions. I was denied a raise based on unfair critical errors and corrective actions during that year. Greer said STARS did not reward average work with pay increases. That would mean in 2013 only a few people were eligible. Many factors determine pay increases.

16. I also discussed events with Kari Magedoff (Director of Human Resources at STARS) at 1:30 p.m. on February 5, 2015. I called Ms. Robertson at EEOC right after the meeting with Ms.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103


Magedoff and explained the outcome. There was another meeting after my vacation. Anthony

said I needed to come for training in the New Jersey Office due to my production until I

mentioned that he had just confirmed in an e-mail that my production was good. I mentioned

what Kari said in our meeting.  Greer said I did not need to come for training. Within weeks after

my return from vacation in February 2015, Anthony later changed the reason stating that I

needed to make the trip to New Jersey to get assistance with computer and technical issues.

The issues were not very resolvable.

17. The system was down while and around the time I was on vacation.  I saw the e-mails.

.

## 2. Discrimination (Color, Race and Sex)Title VII and Title VI of the Civil Rights Act 1964

18.  During the week of June 4, 2012 during training in New Jersey,  Greer whispered he would

give me more difficult assignments. Other employees did not complain that Reisser or Greer

gave them more difficult assignments or whispered threats to them.  Work assigned to me

throughout my term of employment very seldom gave me the balance of full reviews or

addendum promised by the Appraisal Review Department.  After struggling with workloads, I

asked Greer for more balanced tasks so that my production would not suffer.  I began to get

Quality of Excellence Awards in 2012 and was also awarded in 2013.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

19. Greer never referred to my awards in a professional manner, he always said, "that thing you got". **(Exhibit D).**

20. Earlier, in 2012 when I asked Greer about the report distribution, he said mine was "the luck of the draw". In June 2012, during training, the Appraisal Review Department was told that the system was supposed to correctly distribute four of each report type. Total was eight. Greer said that we should not worry, the system worked. He told the department about the system's capabilities many times in e-mails and in staff phone meetings.

21. On July 24, 2012: I was given 10 assignments with all other review appraisers given fewer. Being assigned extra assignments each day is unfair treatment. (See **Exhibit A**).

22. Greer completed another employee's (Kathy Crone) assignments when the Virtual Private Network was down and/or when the computer system failed. He never completed my assignments or offered. He only referred to how it would affect my production. I think these actions were racially motivated.

23. I explained to Magedoff (HR) in February of 2015, and August 2014 that my treatment was different from others and that Greer's corrective actions and write-ups included false accusations. I asked her if I had to sign the actions. She did not remedy the situation, only telling me that I had to sign the actions. She did not act in good faith. She knew about all the issues I faced and that our department had.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

24. Greer held me responsible for errors that others made throughout my term of employment (2012 to 2015). He disciplined me with non-critical and critical errors that were not my fault. **(See Exhibits B, G, and H)**

25. I was not reimbursed immediately for 2012 travel expenses to New Jersey training. Most other employees were reimbursed right after training, our department had grown. When I asked Dombrowski in front of other employees during meetings, there was no change in my re-imbursement status. Paper work was submitted to respective departments per staff. Heather Flood stated that they had not been submitted properly. I was reimbursed almost one year later.

26. In an e-mail Wednesday, June 25, 2014 right after a meeting, I sent a confirmation e-mail to Greer about expected production. He had told me to do as many reports as I could do because of computer and system issues. Technicians could not repair my computer so a computer switch was needed. Neither were new computers.

27. In July of 2014, my production and quality were at 100% per e-mails from my supervisor **(Exhibit E).** Days after the computer switch, Greer issued a notice of corrective action (Aug. 6, 2014) stating I had lost a full 8 hours of production. Severe VPN and computer issues woild not allow me to work without assistance. I worked with Greer that morning and indicated there were issues.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

## 3. Retaliation Title VII Civil Rights Act 1964 (Failure to promote, failure to stop harassment, and adverse actions)

28. I e-mailed and spoke with Weaver on the phone on August 4, 2014, the day when we made the computer switch. I told him about maintaining records and confirmed that I was trying to remain in compliance. Greer stated in the August 6, 2012 corrective action that I missed a full day's work on August 4, 2012 but I worked with Greer early that morning on two files and with technical support along with others that day.

29. I also sent e-mails to Weaver after that day and in early 2015 because the retaliation and harassment had not stopped. The environment was becoming more hostile and unsafe. The personnel files received from Speedy Title & Appraisal Review Services (post-employment) in June 2016 also list me as a Review Appraiser. My 2014 e-mails contain the job title Valuation Quality Spec II. In 2013, my e-mails show Staff Appraiser. The 2012 job description along with department meetings and the form we completed on files referenced USPAP.

30. In January of 2015, Kathy Crone's e-mail lists her position as a Appraisal Reviewer, SR. We started at STARS on the same day as reviewers. We performed similar work using the same templates. I did addendums to her appraisal reviews and vise versa. Cardwell Thaxton, the other African American review appraiser in our department resigned on August 2, 2013. His

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

e-mail shows his title as a "Staff Appraiser" in 2014. Our other new Staff Appraiser Supervisor, Michael Woodruff's e-mails even read Staff Appraiser in prior years. We did the same work prior to him being promoted to the supervisor in 2015.

- 31. On March 4, 2015, I wrote to EEOC when Greer spoke to me in a very unprofessional manner. My Dec 2014 corrective action was to end on March 2, 2015. Around that date, Greer threatened to write me up again for minor issues or wording in the write-ups. I told the EEOC representative that I would call the police if necessary.

He later began to write me up again using e-mails just as he did before the Dec 2014 corrective action. All attorneys I consulted said I was not at fault. In a similar prior incident, some issues on the December corrective action were included in e-mails sent to me weeks or so earlier. I asked my supervisor who said that they would not count against me. This increase in surveillance came right after telling me that my performance and quality were good. Because the December 29, 2014 corrective action was to end on March 2, 2015, I contacted EEOC again. (**See Exhibit G).**

## 4. FLSA (Fair Labor Standards Act) violations and Overtime Pay

32. On March 26, 2015, Alejandra from the Illinois Department of Labor called me at home and asked me a few questions. She stated that I should file a claim for overtime wages. I had previously called the office to ask about being paid overtime because in order to keep my job I

16 of 28

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

had to work additional hours without pay. Supervisors did not always allow me to log additional hours in Kronos, they changed procedures often. Regardless, I was not paid for the additional hours. Supervisors were aware of systems failures daily including those between 2:00 p.m. and 4:00 p.m.

33. PHH, SBP, STARS and/or Cirtrix systems froze or would not allow me to exit the file. I needed to take the extra time to prevent data loss. Delays negatively affected my production and it took even longer to complete production logs as required as by STARS. I was given remedies that did not work. Others were not mandated to keep their hours the same way or with the same details. I spent time (system frozen) waiting for e-mail responses on how to logon or how contact from support. Eventually, I was called to another phone meeting ( around February/March 2015) stating that the time I spent keeping track of hours interfered with my production. The system still ran slow. My position at STARS was again threatened during the meeting. Even if I arrived early in the morning, I was not paid for overtime. Greer and Reisser were aware. In 2015, Anthony Greer was aware of these difficulties and changed rules that everyone could take at least 20 minutes beyond our 4:00 p.m. daily. I did not get paid for this additional time. There were many other incidences like this one and longer hours.

34. I was denied a raise during 2014 Performance Review. On Tuesday, March 3, 2015 Anthony said that STARS did not reward average work with a pay increase. The two corrective actions affected my performance reviews and little was done by STARS to remedy the situation

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

although Anthony Greer was at fault per state agencies and at times per the STARS Human Resources Department.

### 5. Section 1981 of THE CIVIL RIGHTS ACT OF 1866

35. I resigned on March 23, 2015 early that morning. Kari indicated to Anthony to pay me for the whole day. My termination records state: Information: All future terminations will be applied the day after the selected termination date. If a current date or a previous date has been selected the termination date will be applied immediately. Kari was aware of adverse actions at STARS but did not contact me. Her e-mail shows that she was Director of Human Resources National Joint Ventures. Below that was the name Corelogic. She did not offer to assist me at all during my exit.

36. In March of 2015, after my vacation, Greer insisted that I make a trip to Mount Laurel for training so he could monitor how I used the computer. I worked home-based, we had done numerous online sessions since 2012. Others were having computer or VPN issues as shown by Greer allowing us to work 20 minutes extra at the end of the work day. Kari could have intervened again but instead, I began the process of looking for a plane ticket.

37. In mid- March 2015, I feared that the conflict would continue in person in Mount Laurel. I did not have much of a choice about travelling to New Jersey for training. Greer and other in-house staff in Jersey still had computer and VPN failures. There was not much resolution. I

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

contacted the IDFPR (Weaver) by phone and stated that the environment was so hostile that I
could not continue to work for STARS.

### 6. Illinois Minimum Wage Laws and Equal Pay Act of 1963

38. STARS paid me less in salary than my male and possibly female counterparts. June 2016
post employment records show the minimum salary at $55K and maximum at $70K. My starting
salary was $55,009.50 annualized. Only 9.50 over the minimum. I had 14 years of experience
with above average education.

39. I denied participation in overtime hours due to production. (Later, after conversations with
staff, it seemed possible that managers could track our production). This happened when I first
returned home from training in 2012. On August 16, 2012, only two months after I began at
STARS, Supervisor Dombrowski sent me an e-mail that stated , "everyday I monitor the total
work production on each of my team players". He continued to say that he understood that I had
computer issues but had not met expectations. I replied to his e-mail explaining that I tried to
call him and left a message. My e-mail stated, "Due to computer and phone issues, I have not
had a chance to log all my production. I have tickets for the computer issues submitted and
other issues such as the phone." Even given this situation, I was not allowed overtime, while
other employees learning to use the new system experiencing similar issues were allowed to do
overtime with pay. Rudy states that reviewers do 10 reports per day. In the August 14, 2012 e-

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

mail Supervisor Anthony Greer stated, " Everyone else including David is completing 9 tasks a day which is 100% productivity." David later left STARS, I am not sure why he left. He started with me on June 4, 2012.

40. Anthony mentioned in my performance review that I was never disrespectful. Although I telecommute and had very little direct contact with those in the office, I believe that Anthony Greer disciplined me at times when I had nothing to do with the matters. I could see their work when I performed tasks on files. I asked questions. Other employees also lashed out at the managers via e-mails. None of the other review appraisers had corrective actions per my conversations with them. I asked other employees about these matters because it was suggested to me by EEOC, attorneys, and the STARS IT team.

41. In one instance, Fred Kessler ( another review appraiser) stated that none of the solutions suggested by the computer IT technicians solved the issues. Fred also told me that he used the "regular" internet service in his area. Greer insisted that I purchase a second internet contract (with Comcast) which did not work better than my first service. This is an example of discrimination based on sex and race but also shows that Greer continually harassed me causing further financial harm. It also shows adverse conditions and an unsafe work environment.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

### 7. **Illinois Whistleblower Act**

42. I currently have a pending case in the Illinois Northern District Court. When asked for employment records, I was told that the defendants attorneys stated that there are very few records that could be obtained. This act prohibits employers from retaliating if employees are involved in court proceedings.

43. The original complaint to the Northern District Court of Illinois also includes violations of the New Jersey "CEPA" (New Jersey Conscientious Employee Protection Act). STARS was aware of this claim.

44. In June 2016, when I reviewed employee records given to federal attorneys, (after leaving STARS), I found out that Greer entered into my employee records a denial of my rehire which is an additional retaliatory act. It states that I did not give proper notice. My contract stated that employment was at will with no requirement for notice upon termination.

45. One page of Personnel Records show that Kari Magedoff sent an e-mail to Greer and Nancy Reuter (Human Resources Coordinator). It stated, "Going forward, in sensitive employment situations, please reach out to me prior to contacting the employee." I had discussed the adverse conditions with Kari Magedoff during my employment.

46. Some of the adverse actions and acts of retaliation and discrimination will overlap.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

### 8. New Jersey Conscientious employee Protection Act (NJ "CEPA")

47. The supervisor was limiting my activities at work, demoting my work efforts, and segregating me from other employees. The supervisor has access to information in the Virtual Network System to comprise summary data for discussion. I even wrote up files at work as suggested by him and other departments would have us make changes to the file. More details were needed for other departments. My job at STARS suffered and there was damage to my reputation resulting from the defendants' actions and motives. My reputation was at stake and it took time to re-do the files.

48. Anthony held me accountable for Quality Control errors that others made and that others should have gone back into the system and corrected. Discussing these matters took part of my production time as well as fixing the errors **(Exhibits B, G and H).** My monthly quality evaluations suffered. I have included examples of how he communicated to me and other employees.

49. On August 27, 2014, a town hall meeting revealed that only four out of ten review appraisers still worked inside the Mount Laurel office. The rest of the team consisted of us---the telecommuting staff of review appraisers. When I resigned, Kathy Crone and Fred Kessler were both still employed by STARS. The company should have told appraisers about office closings

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

per New Jersey laws. Others located closer to Mount Laurel may have been more aware of details.

50. There were many disagreements between other STARS appraisers and the department heads throughout my term of employment there. Some issues were reported to state and maybe federal agencies. The majority of those disagreements did not directly involve me. There was an e-mail involving the Attorney General sent to the appraisal review staff. There were changes going on with our review process. Our supervisors suggested we call the local offices if we had questions. It is typical for appraisers to reach out to these type of professionals. Actions towards me detailed in this complaint were frequent and retaliatory.

51. Greer's action to issue a Notice of Corrective action was retaliatory. It occurred only days after discussions with the IDFPR on how to maintain records. On the day of the computer switch, I worked on file (s) sent to me by Greer between 10:13 a.m. and 11:32 a.m. I communicated to him that the system was very slow. On August 5th or so in 2014, during an online session with Greer he attempted to show me how to make changes to the new system. It froze and we had to re-boot three times. These may have been VPN issues because we had prior issues with logging onto the web site. I believe they were verification or either certification issues. It required long sessions with technical support to resolve. Issues causing delays in production occurred throughout my term of employment (2012-2015) no matter what system updates were done. These issues were part of the system failures beyond my control. These were part of severe the issues I had faced within that past week. I explained all this to Greer

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

and STARS. On August 6, 2014, I received a Notice of Corrective Action. I did contact a higher up in the technical support team. When there were system delays, there were often phone delays.

## 9. ERISA

52. STARS issued an insurance policy to me for which they later could not find the correct policy or answer questions in line with the information originally given. It was not explained to me properly even after talking to several agents.

53. In addition, with proper salary and benefits, I would have qualified for different and possibly better benefits plans and higher company contributions. The timing of my plan reaching certain qualifying amounts could have been different. I noted in response to a corrective action that my days off were not being handled properly.

54. I was denied time off and further harassed by Greer considering floating days in on or around November/December 2014. I took this matter to Kari Magedoff , Director of Human Resources and she failed to do an investigation of the information. She did not approach the issue appropriately given the fact that she ensured me that I was a good employee. Again after the Illinois Department of Financial and Professional Regulation was involved, I should have received treatment different and equal to other employees.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103


55.  After my employment with STARS (on or around March 2015 to November 2015) they issued two dental policies and had to issue refund. I contacted Corelogic and the corresponding agencies about this matter, but it took several months to resolve.


### 10. Appraiser Independence Requirements Violations

56.  Greer, Magedoff and STARS' actions in 2014 and 2015 were in attempt to result in lower scores on my evaluations and performance reviews preventing promotion, threatening my reputation and to terminate me.  These actions and those below were not in good faith.

57.  Magedoff was made aware of the corrective actions and should have prevented Greer from retaliating. Actions were against STARS' policies and Appraiser Independence Requirements. Magedoff never spoke to me about how to cope with unfair treatment. Magedoff failed to discipline Greer appropriately and he continued to harass and retaliate against me.

58.  I was given more difficult assignments than others, this action is against our appraisal guidelines and will overlap with violations in Appraiser Independence Requirements. It is a form of coercion.

59.  Magedoff and Greer  acted to stop me from contacting the regulatory agencies, or asking for further guidance from STARS supervisors. These actions were attempts to both fire me from my job and cause me to want to leave my position at STARS.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

## 11. **Frank Dodd Act Violations**

60. August 4, 2014 was the date of the first corrective action. I was told that it was not important and would not go my record. I was told during a meeting that since my computer did not work that I could do as many assignments as I was able to perform. **(See Exhibits C and Exhibit F- job description and performance expectations)**. My annual pay raises were affected.

61. This Act states that appraisers should be paid "reasonable and customary fees". I was not paid in line with my qualifications although my employee records show that I could have received higher pay and benefits. I received Quality of Excellence Awards and I was fully capable of meeting goals and performance standards. Discrimination and retaliation along with other adverse actions caused damage to my reputation, were unsafe and forced me to leave my job.

## **RELIEF**

- Reinstatement is not possible. STARS and the Appraisal Review Department willfully carried out these acts. I am asking the court to help determine additional forms of relief.
- My treatment was more severe and more frequent than others employees in our department. I was threatened verbally several times, subject to increased surveillance during the entire term of my employment. I am asking the court help determine additional relief
- I am asking the for punitive damages. The egregious acts were intentional harmful and caused an unsafe environment.

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

- I am asking for relief in the amount of $180,000 and any further determined relief during this process. I ask the court for assistance in determination of any other relief. Total relief shall include unpaid overtime and liquidated damages in the amount of unpaid overtime, monthly interest for damages, attorney's fees and costs, willful FLSA violations, illegal retaliation and illegal discrimination, back pay, benefits, front pay, damages to my reputation, lost future earnings, pre judgment interest, and post judgment interest. I am also asking for relief for vacation, promotion pay, pension and retirement pay, medical and life insurance pay.

Lisa Parks  (August 4, 2017)

/s/Lisa Parks

Plaintiff

7843 S. East End Avenue Unit 2

Chicago, Illinois, 60649

773-721-9554

Lisa Parks v STARS et. al

Amended Complaint Supplemental Pages

August 4, 2017

1:16-cv-02103

**EXHIBITS FOLLOW**

**AND**

**EEOC RIGHT TO SUE LETTER**

EEOC Form 161-R (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Lisa Parks**
**7843 S. East End Avenue**
**Apt #2**
**Chicago, IL 60649**

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1300**
**Philadelphia, PA 19107**

|  | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2015-10110 | **Legal Unit** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| X | More than 180 days have passed since the filing of this charge. |
|---|---|
|  | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| X | The EEOC is terminating its processing of this charge. |
|  | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

|  | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
|  | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Spencer H. Lewis, Jr.,**
**District Director**

12/1/15

*(Date Mailed)*

Enclosures(s)

cc:

**Karie Magedoff**
**SPEEDY TITLE AND APPRAISAL REVIEW SERVICES LLC**
**200 Midatlantic Drive**
**Mt. Laurel, NJ 08054**

Enclosure with EEOC
Form 161-B (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --**     **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Parks v STARS et. al

List of Exhibits

August 4, 2017

1:16-cv-02103

List of Exhibits page 1 of 2

Exhibit A - Work flow July 24, 2012

Exhibit B- QC Non-critical error e-mail

Exhibit C- Corelogic Job Board Advertisement

Exhibit D- Quality of Excellence Award

Exhibit E- Quality Control Monthly Summary Report

Parks v STARS et. al

List of Exhibits

August 4, 2017

1:16-cv-02103

<u>List of Exhibits page 2 of 2</u>

Exhibit F- E-mail about Production Expectations

Exhibit G- Communication with EEOC

Exhibit H- E-mails STARS staff

Exhibit I- E-mail about Staff Meeting and Notes/ e-mail to court for records

Exhibit A

**today's work flow 07-24**
Dombrowski, [redacted]
Sent: Tuesday, July 24, 2012 7:47 AM
To: [redacted] Parks, Lisa; [redacted]  *exhibit* (A)

Good morning everyone,

Here is today's work flow, everyone is expected to get all their tasks completed by days end.

Thanks
Rudy

[redacted]r please work and complete the following tasks:

| Status | Type | Code | Team | | | | Description | State | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| In Underwriting | CONV | 220 | Brands West 3 (BW3) | 1 | Non-ML | 365 | Private Bank N.A. - Invested | NY | $496,292 | 1,500,000 | 0 | HR | 33.08 | REFI | 08/10/12 |
| In Underwriting | CONV | 200 | Brands West 7 (BW7) | 1 | Non-ML | 364 | Private Bank N.A. | CA | $268,026 | 1,300,000 | 0 | SFR | 16.75 | REFI | 08/17/12 |
| In Underwriting | CONV | 220 | MTL_MS3 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CA | $1,200,793 | 3,400,000 | 0 | SFR | 35.31 | REFI | 07/31/12 |
| Package Received from Customer | CONV | W1J | MTL_CHI2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | RI | $5,000,000 | 8,000,000 | 0 | SFR | 58.82 | REFI | 07/27/12 |
| In Underwriting | CONV | 220 | MTL_CHI2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | TX | $325,999 | 1,500,000 | 0 | PUD | 19.46 | REFI | 08/17/12 |
| Package Received from Customer | CONV | 67M | MTL_CHI2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CA | $592,725 | 1,150,000 | 0 | SFR | 48.38 | REFI | 08/01/12 |
| In Underwriting | CONV | 220 | MTL_MH12 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | NJ | $198,253 | 1,000,000 | 0 | SFR | 13.67 | REFI | 07/24/12 |

-------------------------------------------------------------------

[redacted] please review the following work:

| Status | Type | Code | Team | | | | Description | State | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Funded | CONV | 554 | JAX JHY1 - ALD | 1 | Non-ML | 359 | Bank - Invested | CT | $1,500,000 | 2,405,000 | 2,405,000 | SFR | 62.37 | PUR | 07/23/12 |
| In Underwriting | CONV | W1J | Brands North 1 (BN1) | 1 | Non-ML | 365 | Private Bank N.A. - Invested | NC | $750,000 | 1,200,000 | 0 | SFR | 86.7 | REFI | 07/27/12 |
| Package Received from Customer | CONV | 67M | MTL_MS3 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CO | $678,119 | 3,000,000 | 0 | PUD | 29.48 | REFI | 08/21/12 |
| Request for Cancellation | CONV | 66M | MTL_MS3 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | FL | $1,520,000 | 1,900,000 | 1,900,000 | PUD | 95 | PUR | 08/01/12 |
| In Underwriting | CONV | 64M | Tier Team B (TRB) | 1 | Non-ML | 364 | Private Bank N.A. - Invested | MN | $248,000 | 2,000,000 | 0 | SFR | 14.93 | REFI | 07/23/12 |

12/8/2014    today's work flow 07-24

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| In Underwriting | CONV | 64M | Tier Team B (TRB) | 1 | Non-ML | 364 | Private Bank N.A. | MN | $248,000 | 2,000,000 | 0 | SFR | 14.93 | REFI | 07/23/12 |
| Package Received from Customer | CONV | 67M | MTL_CHI2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CA | $592,725 | 1,150,000 | 0 | SFR | 48.38 | REFI | 08/01/12 |
| Package Sent to Customer | CONV | W1J | MTL_CHI2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | NY | $669,510 | 1,100,000 | 0 | SFR | 66.95 | REFI | 08/13/12 |

---

**Lisa Parks please review the following:**

Exhibit A₂

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Package Received from Customer | CONV | W1J | MTL_CHI2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | RI | $5,000,000 | 8,000,000 | 0 | SFR | 58.82 | REFI | 07/27/12 |
| In Underwriting | CONV | 66M | Brands West 3 (BW3) | 1 | Non-ML | 365 | Private Bank N.A. - Invested | MA | $2,905,000 | 5,100,000 | 0 | SFR | 53.79 | REFI | 07/31/12 |
| Package Sent to Customer | CONV | 500 | MTL_CHI1 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CA | $958,065 | 1,800,000 | 0 | 2U | 55.53 | REFI | 08/20/12 |
| Package Received from Customer | CONV | R02 | MTL_MS2 | 1 | Non-ML | 364 | Private Bank N.A. | CA | $480,446 | 1,260,000 | 0 | SFR | 38.13 | REFI | 09/04/12 |
| In Underwriting | CONV | 65M | MTL_CHI2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CO | $1,000,000 | 3,000,000 | 0 | PUD | 32.25 | REFI | 08/31/12 |
| In Underwriting | CONV | 67M | MTL_MS1 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CA | $988,000 | 1,350,000 | 0 | SFR | 89.81 | REFI | 08/13/12 |
| In Underwriting | CONV | R02 | Brands North 1 (BN1) | 1 | Non-ML | 364 | Private Bank N.A. | CA | $561,409 | 1,400,000 | 0 | SFR | 55.95 | REFI | 07/23/12 |
| Package Sent to Customer | CONV | 100 | Brands North 1 (BN1) | 1 | Non-ML | 364 | Private Bank N.A. | CA | $405,000 | 1,100,000 | 0 | SFR | 37.72 | REFI | 10/10/12 |
| In Underwriting | CONV | W1J | MTL_MS2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | UT | $1,000,000 | 2,000,000 | 0 | SFR | 66.66 | REFI | 07/30/12 |
| In Underwriting | CONV | 67M | MTL_CHI2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CA | $1,500,000 | 8,000,000 | 0 | SFR | 21.42 | REFI | 09/07/12 |

---

**J_____ please review the following work:**

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| In Underwriting | CONV | 100 | Brands West 3 (BW3) | 1 | Non-ML | 364 | Private Bank N.A. | CT | $408,688 | 2,500,000 | 0 | SFR | 21.5 | REFI | 08/24/12 |
| Package Sent to Customer | CONV | 64M | MTL_MS2 | 1 | Non-ML | 364 | Private Bank N.A. | SC | $353,791 | 1,850,000 | 0 | PUD | 19.12 | REFI | 08/27/12 |

today's work flow 07-24

$Exhibit\ A_3$

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Package Received from Customer | CONV | 67M | Brands North 1 (BN1) | 1 | Non-ML | 365 | Private Bank N.A. - Invested | DC | $1,279,784 | 1,850,000 | 0 | SFR | 69.17 | REFI | 09/04/12 |
| Package Received from Customer | CONV | 67M | MTL_MS2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | NY | $704,337 | 1,600,000 | 0 | HR | 46.95 | REFI | 09/23/12 |
| Package Sent to Customer | CONV | 66M | Brands West 3 (BW3) | 1 | Non-ML | 365 | Private Bank N.A. - Invested | DC | $3,627,415 | 5,800,000 | 0 | SFR | 62.54 | REFI | 09/04/12 |
| Package Sent to Customer | CONV | W1J | Brands North 1 (BN1) | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CT | $980,000 | 2,900,000 | 0 | SFR | 33.79 | REFI | 09/10/12 |
| In Underwriting | CONV | W1J | Brands West 7 (BW7) | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CA | $996,000 | 1,300,000 | 0 | SFR | 80 | REFI | 07/25/12 |

---

please review the following:

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Package Printed | CONV | 67M | MTL_MS2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | MN | $1,850,000 | 2,466,700 | 0 | PUD | 119.35 | REFI | 08/20/12 08 |
| Package Received from Customer | CONV | 65M | JAX JHY1 - ALD | 1 | Non-ML | 359 | Bank - Invested | IL | $878,936 | 1,360,000 | 0 | SFR | 70.31 | REFI | 08/22/12 08 |
| Package Sent to Customer | CONV | 66M | MTL_MS2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CT | $802,974 | 1,100,000 | 0 | SFR | 72.99 | REFI | 09/17/12 09 |
| Package Received from Customer | CONV | W1J | MTL_CHI1 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | MA | $1,920,000 | 2,400,000 | 0 | SFR | 80 | REFI | 08/10/12 08 |
| Package Sent to Customer | CONV | 66M | MTL_MS2 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CT | $802,974 | 1,100,000 | 0 | SFR | 72.99 | REFI | 09/17/12 09 |
| Package Received from Customer | CONV | 67M | MTL_MS1 | 1 | Non-ML | 365 | Private Bank N.A. - Invested | CA | $933,000 | 1,700,000 | 0 | SFR | 69.79 | REFI | 08/20/12 08 |

Rudy Dombrowski
Staff Appraisor Manager



STARS

2000 Midlantic Drive, Suite 300
Mt. Laurel, NJ 08054



# Exhibit B

**RE: Qc non critical error**
Parks, Lisa
**Sent:** Tuesday, October 01, 2013 10:52 AM
**To:** Greer, Anthony

$exhibit$ 

That condition was not part of the task I pulled. I did not do the original review on this file. The file was approved when I reviewed it and was reviewed on 5/21/2013, 5/23/2013, 9/12/2013 and 9/21/2013. The day I reviewed it, the system was down. I do not feel that clearing that condition should count against me when up to 3 other STARS reviewers had the task of reviewing prior to my review.


*Lisa Parks*

*Valuation Quality Spec II*

Description: Description: Description: stars logo

*Let me know if I can be of further assistance to you.*

*Always Glad to help.*



*Mon– Fri   7:30AM to 4:00PM central*

---

**From:** Greer, Anthony
**Sent:** Tuesday, October 01, 2013 10:17 AM
**To:** Parks, Lisa
**Subject:** RE: Qc non critical error

This was a miss during your initial review and was not a consequence of an IT issue.

Anthony Greer
Certified Residential Appraiser
Staff Appraiser Supervisor



Anthony.Greer

**From:** Parks, Lisa
**Sent:** Tuesday, October 01, 2013 11:15 AM
**To:** Greer, Anthony
**Subject:** RE: Qc non critical error

 ticket submitted

Anthony

This day the system did not work. You stated that we should submit the tickets when sent these errors. I will look into the error.


*Lisa Parks*

*Valuation Quality Spec II*

*Let me know if I can be of further assistance to you.*

*Always Glad to help.*



*Mon– Fri   7:30AM to 4:00PM central*

**From:** Greer, Anthony
**Sent:** Tuesday, October 01, 2013 10:13 AM
**To:** Parks, Lisa
**Subject:** Qc non critical error

| Date | Loan # | Source | Team Player | Critical Error | Non-Critical Error | QC Underwriter comments |
|------|--------|--------|-------------|----------------|---------------------|--------------------------|
| 9/25/2013 | | 365 | Lisa Parks | | 7) Conditions applied/removed /cleared? | Condition for Appraiser to correct comp 2 to "did" transfer in the past 12 months from 5/21/13 is still open in conditions managment. |

Lisa,

Please correct this error.

$Exhibit\ B_2$

Anthony Greer
Certified Residential Appraiser
Staff Appraiser Supervisor



# Exhibit C



# We are CoreLogic®

CoreLogic

This is where it all begins–your invitation to innovation. If you're ready to join a company that promotes creativity, problem solving, initiative and professional growth, you can search our job board, review available positions and apply online.

*CoreLogic is an Equal Opportunity/Affirmative Action employer committed to attracting and retaining the best-qualified people available, without regard to race, color, religion, national origin, gender, sexual orientation, age, disability or status as a veteran of the Armed Forces.*

Search Jobs    |    My Account    |    Log In    |    Help

### Job Title:  Review Appraiser

| Division: | STARS | Req #: | 353283 |
|---|---|---|---|
| City: | Mount Laurel | State: | NJ |
| Shift: | 1st | Travel Involved: | |
| Category: | Property Specialist | Type of Position: | Full-Time |

**JOB DESCRIPTION:**

STARS, a joint venture of CoreLogic, is seeking a Residential Review Appraiser in the Mount Laurel, New Jersey–Greater Philadelphia area. The Appraiser is responsible for reviewing and analyzing the residential appraisal reports and supporting documentation prepared by internal and/or external appraisers to validate accuracy, adequacy and compliance with industry standards.  Responsibilities include:

Must be a current state residential licensed appraiser, and continue to maintain certification status.
Retain current licensing level
Review residential appraisals that have been submitted by Field Appraisers.
Work closely with Appraisal Underwriters.
Research residential property appraisals in accordance with company, investor, USPAP and GSE's guidelines.
Must access and interpret third party tools.
Apply proper application of valuation methods and techniques to residential properties.
Provide written responses to reconcile value discrepancies between original appraisal and other valuation reports.
Post QC of any suspected misrepresentation or fraud.
Perform other duties as assigned by management.
Must be able to work for STARS only.

**JOB REQUIREMENTS:**

Associate of Arts degree preferred. High school diploma or GED required.
Knowledge of current appraisal systems and continuing education coursework.
Competent in all property types, including Multi-family, Condo, Coop, Condotel, over one million dollar homes etc.
Thorough knowledge of USPAP and .GSE's
Experience defending appraised value in a loan sale setting with investors preferred.
Excellent written and verbal communication skills.
Familiarity with residential appraisal forms software.
Experience as a staff appraiser or has been employed full time as an independent fee appraiser within the past 24 months.

RETURN TO SEARCH                    APPLY ONLINE                    SEND TO FRIEND

If you need reasonable accommodation to complete the on-line application, please contact the Human Resources Department at jobs@corelogic.com .

COPYRIGHT © 2011 CORELOGIC. ALL RIGHTS RESERVED.                    LEARN MORE - VISIT  CoreLogic.com

**Exhibit D**



**STAR**

Speedy Title & Appraisal Review Services

# Quality of Excellence

### Certificate is Awarded to

## *Lisa Parks*

### Congratulations and Thank You for your dedication!

April - August 2013

_____Robert



Exhibit D

123Certificates

**Exhibit E**

To:

Parks, Lisa

Actions

 Exhibit E

Tuesday, September 02, 2014 1:50 PM

You replied on 9/3/2014 7:40 AM.

| Name | Review Period QC Count | June QC Count | July QC Count | July Critical Rating % | Review Period Critical Rating % | July Non-Critical Rating % | Review Period Non-Critical Rating % | TP Count | Review Period Critical Count |
|------|----|----|----|----|----|----|----|----|----|
| Lisa Parks | 33 | 19 | 14 | 100.00% | 100.00% | 92.86% | 96.97% | 1 | 0 |

Lisa,

No need to call in for the meeting. I don't have anything new to go over other than these QC numbers from July which are self explanatory. You did very well with respect to your quality numbers in July. Let have Sept be a bounce back month since you did receive a critical in August. Augusts numbers are not out yet and I will send them over once I get them.

Thanks,

Anthony Greer
Certified Residential Appraiser
Staff Appraiser Supervisor



Below is an example of a file which was sent from Quality Control. My assignment the day I did this file was to update on section. I was disciplined for an area of the file which had gone blank for at least two months. How could the company service this file for two months and not go back to the person who was supposed to make this entry. For me to enter this number meant that I had to research and provide data to suport the information. The original reviewer usually can quickly go back into the file and remember whether the data supports the numbers. I indicated to him that my task was only re do one thing. On a prior similar tim, he clearly stated that when I do a file like this, I do

**Exhibit F**

# ✻ PRODUCTION WED JUNE 25 2014--Per meeting do as many reviews as you can-- system is down.

Parks, Lisa
**Sent:** Wednesday, June 25, 2014 4:07 PM
**To:** Greer, Anthony
**Attachments:** Staff Appraiser Productiv~1.xlsx (12 KB)

Exhibit F

Per meeting do as many reviews as you can-- system is down.

**Thanks! Let me know if I can assist further!**
*Lisa Parks Valuation Quality Spec II Appraisal Review Dept.*

# STARS

*Speedy Title & Appraisal Review Services, LLC*



# Exhibit G

could solve the issue. He stated that my production and quality were good but the computer issues were the main reason.

$Exhibt\ G$

March 4, 2015: Anthony again stated that when other review appraisers showed the same verbage or written words in reports that they were all wrong. I wrote this to EEOC "

Anthony spoke to me in a rude manner that was unprofessional. He threatens to write me up for minor issues stating that all other reviewers on the staff are wrong if they have the same issues or wording in their write ups.

March 2015:

The system would not hold rent figures. We had to re-enter up to 5 times and sometimes it still would not show when the next person views the file. I was asked to correct these types of errors when others were responsible for entering the system. It counted against me as an error.

I wrote to EEOC: I have an e-mail from who is a reviewer that the system never holds the rent figure.

I also stated: One file did not have rent for 2 months or so. The error was sent to me and not the original reviewer. Also, my files are QC very frequently. Anthony indicated that I have only the day I do the file to make corrections. The errors do not always show up the same day or within a two day period. I am very concerned with his aggressiveness and how he is unprofessional in his responses to me about my work and when I ask simple questions about how the system performs

March 23, 2015. I resigned. I sent an e-mail to Anthony Greer.

**Exhibit H**

## RE: 02-24-2014

Greer, Anthony
Sent:Monday, February 24, 2014 12:40 PM
To: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Cc: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Understood ill review with Andy.

Exhibit H

P 3 '

Anthony Greer
Staff Appraiser Supervisor



▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

From: ▓▓▓▓▓▓▓▓▓
Sent: Monday, February 24, 2014 1:15 PM
To: Greer, Anthony; Parks, Lisa; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓;▓▓▓▓
▓▓▓▓ ▓▓▓▓ ▓▓▓
Cc: ▓▓▓▓▓▓▓▓; ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Subject: RE: 02-24-2014

Four of the last five tasks I've gotten have been processing revisions, I understand how they should not be counted as an addendum however with multiple addendums sent out the process does take production time and if the revision is not satisfied and a new request needs to be sent this adds even more time; i.e. the last one I had was for the appraiser to review the sales contract, this was done however the appraiser forgot to mark the report as is so a new condition needs to be sent out.

▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓

# STARS

*Speedy Title & Appraisal Review Services, LLC*

From: ▓▓▓▓▓▓▓▓▓
Sent: Monday, February 24, 2014 11:49 AM
To: Parks, Lisa; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓;▓▓▓▓▓,
▓▓▓▓▓▓▓▓▓▓
Cc:▓▓▓▓, ▓▓▓▓; ▓▓▓▓ ▓▓▓▓▓, ▓▓▓▓, ▓▓▓▓▓ ▓▓▓▓, ▓▓▓▓, ▓▓▓▓▓
Subject: RE: 02-24-2014

Correct.

Anthony Greer
Staff Appraiser Supervisor







Exhibit H₂

---

**From:** Parks, Lisa
**Sent:** Monday, February 24, 2014 11:22 AM
**To:** Greer, Anthony; ~~
~~
**Cc:** ~~
**Subject:** RE: 02-24-2014


So this refers only to those addendum requests from the processing department? those from
our department are the usual.

No longer count a processing revision as a review task(address changes, contract reviews, fee
changes, flood map changes etc.)
There are real quick checks that should just take a few minutes.


Will follow thru.

Lisa Parks

Valuation Quality Spec II

**Error! Filename not specified.**

Let me know if I can be of further assistance to you.

Always Glad to help.

~~

~~

Mon– Fri　7:30AM to 4:00PM central

---

**From:** Greer, Anthony
**Sent:** Monday, February 24, 2014 10:00 AM

3/7/2015

RE: 02-24-2014

To: ~~████████, ████████, ████████, ████████, ████████, ████████, ████████, ████████, ████████;~~ ████████

Cc: ~~████████, ████████, ████████, ████████, ████████, ████████, ████████;~~ Parks, Lisa

**Subject:** RE: 02-24-2014

This is a different scenario. Everyone is responsible for all that is in the QC Review Plan on every appraisal/revision review. I am going to see is QC can make an exception for processing revisions.

Anthony Greer
Staff Appraiser Supervisor

$Exhibit\ H_3$

**STAR** ~~Speedy Title & Appraisal Review Services~~

~~████████████~~
~~████████████~~

From: ~~████████████~~
Sent: Monday, February 24, 2014 10:52 AM
To: Greer, Anthony; ~~████████, ████████, ████████, ████████, ████████~~

Cc: ~~████████, ████████, ████████, ████████, ████████,~~ Parks, Lisa
Subject: RE: 02-24-2014

That's fine but if you remember I have been dinged before and it was because the original reviewer missed something and you told me that I should still have reviewed it and caught it when I was doing the addendum review. You indicate both the original reviewer and I were both getting dinged that is why I now check regardless of whether I am first, second or third reviewer. Also alerts can pop up at anytime, keep that in mind please.

~~████████████~~
Staff Appraiser

**STAR** ~~Speedy Title & Appraisal Review Services~~

~~████████████~~
~~████████████~~
~~████████████~~

From: Greer, Anthony
Sent: Monday, February 24, 2014 10:49 AM
To: ~~████████, ████████, ████████, ████████, ████████, ████████, ████████, ████████~~

Cc: ~~████████, ████████, ████████, ████████, ████████, ████████, ████████;~~ Parks, Lisa
Subject: RE: 02-24-2014

I will discuss with Andy and the QC dept on how they are to be handled. For now just and a template and tool as normal. If something is missed prior to that review of a processing revision the error should be charged to the previous reviewer.

Anthony Greer
Staff Appraiser Supervisor

3/7/2015

RE: 02-24-2014



$Exhibit\ H_9$

**From:**
**Sent:** Monday, February 24, 2014 10:39 AM
**To:** Greer, Anthony; ~~illegible names~~
**Cc:** ~~illegible names~~; Parks, Lisa
**Subject:** RE: 02-24-2014

So when we get these addendum request we do not have to follow the normal procedure or go through the normal steps of verifying that all data alerts have been cleared, no ucdp errors are there, we don't then check to make sure all conditions have been cleared? I usually treat these like any other addendum accept for pasting a new tool. I am asking because if I do not go through these steps and someone prior missed something or if a data alert was added after the original reviews I do not want to get any critical or non-critical errors.

Staff Appraiser



**From:** Greer, Anthony
**Sent:** Monday, February 24, 2014 9:00 AM
**To:** ~~illegible names~~ Crone, ~~illegible~~
**Cc:** ~~illegible names~~; Parks, Lisa
**Subject:** RE: 02-24-2014
**Importance:** High

To all,

We still have a lot of work in the queues which is a good thing. There are 193 in queue and we need to push to get thru 96 reviews today. There is a slight change in what your review count should be. No longer count a processing revision as a review task(address changes, contract reviews, fee changes, flood map changes etc.) There are real quick checks that should just take a few minutes. We need to count only appraisal and revisions as reviews.

Anthony Greer
Staff Appraiser Supervisor





**From:** ▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Monday, February 24, 2014 8:40 AM
**To:** ▓▓▓▓▓▓▓▓▓ Breer, Anthony; ▓▓▓▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓
**Cc:** ▓▓▓▓▓▓▓, ▓▓▓▓ ▓▓▓▓▓, ▓▓▓▓ ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓.; Parks, Lisa
**Subject:** 02-24-2014

Good morning,

Your queues have been re-set please close out of idesk and re-open. You may "get next task" again. I need everyone please push yourselves back up to 100% and to get at least 8 today. Please remember to focus on the critical <u>and non-critical</u> areas as well as addendum reduction.

Thank you,
▓▓▓▓▓▓▓▓▓▓▓

Staff Appraiser

**STARS**
Speedy Title & Appraisal Review Services

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Exhibit 11₅

# Exhibit I

**From:** Greer, Anthony <Anthony.Greer@thestarsteam.com>
**To:** Parks, Lisa <Lisa.Parks@thestarsteam.com>
**Cc:** LParks679542299 <LParks679542299@aol.com>
**Subject:** Canceled: Bi-Weekly 1 on 1 Meeting - Call in 44137
**Date:** Tue, Mar 17, 2015 12:45 pm

Exhibit I

This e-mail message and any files transmitted herewith, are intended solely
for the use of the individual(s) addressed and may contain confidential,
proprietary or privileged information. If you are not the addressee indicated
in this message (or responsible for delivery of this message to such person)
you may not review, use, disclose or distribute this message or any files
transmitted herewith. If you receive this message in error, please contact the
sender by reply e-mail and delete this message and all copies of it from your
system.

STARSLD

Parks v Speedy Title & Appraisal Review Services, LLC.

August 4, 2017

**Exhibit I continued**

1:16-cv-02103

pg 2a

1. Please let the records show that on defendant's attorney, Cate Lindemann on Monday, July 24, 2017 at 12:26 p.m as noted by the included e-mail had ex parte communication by phone with Deputy Carolyn Hoesly. The e-mail states, " Thank you, Carolyn. As I told you over the phone just now, I told Ms. Parks last week, over e-mail that she could make a settlement demand ..."

I was not made aware of her plan to contact Carolyn Hoesly prior to the phone call and do not know to full extent what the nature of that call was. Hoesly sent an e-mail to the both of us prior to the e-mail mentioned above at 11:49 a.m. on July 24, 2017.

2. Attorney Lindemann was aware that the term "settlement demand" is used to refer to settlement conferences by the Northern District Court of Illinois. Magistrate Judge Susan E. Cox's Standing Order Setting Settlement Order includes the following statement. It is used to reference Attorney Lindemann's verbiage: "Plaintiff's counsel is to submit a written itemization of damages and settlement demand to defendant's counsel, with a brief explanation of why such a settlement is appropriate."

Parks v Speedy Title & Appraisal Review Services, LLC.

August 4, 2017

Exhibit I continued

1:16-cv-02103

pg 2b

Attorney Lindemann's terminology used is similar to that shown in Judge Cox's documents online as well as standing orders of other Judges. That is how I interpreted it. Her messages to me were unclear.

**The Exhibit I**

also includes e-mail sent to Carolyn Hoesly and defendant's attorneys on July 25, 2017 at 2:25 p.m.. Exhibit I is also the e-mail sent to her on Thursday July 20, 2017 at 4:51 p.m. after my initial e-mail response from Attorney Lindemann. I did not file a motion after receiving information from Carolyn Hoesly. I filed Monday morning July 24,2017 at or around 10:39 a.m. at the courthouse. Attorney Lindemann's statement is not true. I did not go down to the courthouse that afternoon. Attorney Lindemann was aware of what time I sent Hoesly the first e-mail on July 20, 2017. It is shown in the e-mail which she read prior to submitting documents. To my knowledge, it is not required that discovery begin prior to doing a settlement conference.

7/25/2017
Case: 1:16-cv-02103 Document #: 96 Filed: 08/04/17 Page 67 of 69 PageID #:329
RE: 16-cv-2103 Parks v. Magedoff, et al.

through the referral order today. You will get notification from Judge Cox about a date to appear in her courtroom. Good luck with the settlement discussions.

Kind regards,

Carolyn Hoesly
Courtroom Deputy to the Honorable Robert M. Dow, Jr.
United States District Court - Northern District of Illinois
219 South Dearborn Street, Room 1914
Chicago, Illinois 60404
Phone: (312) 435-5668
E-mail: Carolyn_Hoesly@ilnd.uscourts.gov

Exhibit I.
Pg 3

From:     lparks679542299@aol.com
To:       carolyn_hoesly@ilnd.uscourts.gov
Cc:       lparks679542299@aol.com
Date:     07/20/2017 04:52 PM
Subject:  Court Matter

Good Afternoon Ms. Hoesly,

The parties for this case have decided to proceed with a settlement. During our last hearing last week in July 2017, Judge Dow stated that I should contact you. He also stated that we should appear before him first and will use another Judge. Seems that the details of the settlement would not need to be worked out prior to appearing before him. We are looking at next week to see Judge Dow since he will be on vacation until August.

Attorney Lindermann is saying that we do not need to appear before him.

Lisa Parks

---------------------------

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

**From:** Lindemann, Cate <CLindemann@littler.com>
  **To:** Carolyn_Hoesly <Carolyn_Hoesly@ilnd.uscourts.gov>; Bateman, Paul E. <PBateman@littler.com>; lparks679542299 <lparks679542299@aol.com>
**Subject:** RE: 16-cv-2103 Parks v. Magedoff, et al.
  **Date:** Mon, Jul 24, 2017 12:26 pm

$Exhibit\ \underline{I}$
$pg4$

Thank you, Carolyn.

As I told you over the phone just now, I told Ms. Parks last week, over email, that she could make a settlement demand but Defendants would not agree to a settlement conference referral at this time. We ask that the referral be withdrawn.

**Cate Lindemann,** Associate
312.795.3283 direct  312.277.7679 fax  CLindemann@littler.com
321 North Clark Street, Suite 1000 | Chicago, IL 60654

 | littler.com
**Employment & Labor Law Solutions Worldwide**

**From:** Carolyn_Hoesly@ilnd.uscourts.gov [mailto:Carolyn_Hoesly@ilnd.uscourts.gov]
**Sent:** Monday, July 24, 2017 12:06 PM
**To:** Lindemann, Cate; Bateman, Paul E.; lparks679542299@aol.com
**Subject:** Fw: 16-cv-2103 Parks v. Magedoff, et al.

Hi, I forgot to include the attorneys for the defendant. Here you go and attached is the e-mail that was sent to me.

Ms. Parks,  Please cc all counsel of record to avoid any ex parte communications.

Kind regards,

Carolyn Hoesly
Courtroom Deputy to the Honorable Robert M. Dow, Jr.
United States District Court - Northern District of Illinois
219 South Dearborn Street, Room 1914
Chicago, Illinois 60404
Phone: (312) 435-5668
E-mail: Carolyn_Hoesly@ilnd.uscourts.gov
----- Forwarded by Carolyn Hoesly/ILND/07/USCOURTS on 07/24/2017 12:03 PM -----

From:     Carolyn Hoesly/ILND/07/USCOURTS
To:       lparks679542299@aol.com
Date:     07/24/2017 11:49 AM
Subject:  16-cv-2103 Parks v. Magedoff, et al.

Dear Ms. Parks and Ms. Lindemann:

Ms. Parks e-mailed me last week to advise that the parties in this case have decided to pursue settlement. As Judge Dow previously said, he would be happy to put through a referral for a settlement conference with the assigned Magistrate Judge, who is Judge Susan Cox, and you do not need to come back to court before we make the referral. I will put

**From:** lparks679542299 <lparks679542299@aol.com>

**To:** carolyn_hoesly <carolyn_hoesly@ilnd.uscourts.gov>

**Cc:** CLindemann <CLindemann@littler.com>; PBateman <PBateman@littler.com>; candronache <candronache@littler.com>

**Subject:** Hearing with Judge Dow and response to my e-mail on Friday

**Date:** Tue, Jul 25, 2017 2:27 pm

Re: 1:16-cv-02103

Exhibit I pg 5

To all,

The motion was filed yesterday morning at 10:30 a.m. but it not entered into the system until after 4:30 p.m. It usually appears sooner. I clearly indicated that I was still discussing the matter with attorneys. E-mail was sent to Ms. Hoesly at 4:51 p.m. on Thurday, July 20, 2017 right after Attorney Lindemann's first e-mail response to me. Motion for hearing was scheduled as indicated in my e-mail because of Judge's Dow's days of vacation, he said that we needed to come through him with this matter. It was asked to be stricken if no hearing was necessary. Details were included. I was not able to contact Carolyn Hoesly due to her being absent on Thursday and Friday of last week. Seems that she did send in a referral but later removed it. The hearing date still appears on Judge Dow's schedule. Ms Hoesly has now indicated, it is not needed. The e-mail from Ms, Hoesly was sent to me yesterday afternoon.

Lisa Parks