**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LISA PARKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-cv-2103 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| SPEEDY TITLE & APPRAISAL REVIEW | ) | |
| SERVICES, KARIE MAGEDOFF, | ) | |
| and ANTHONY GREER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lisa Parks has sued Defendants Speedy Title & Appraisal Review Services, Karie Magedoff, and Anthony Greer for various violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Title VI of the Civil Rights Act of 1964 ("Title VI"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/4a ("IMWL"), the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* ("IWA"), the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1 *et seq.* ("CEPA"), the Employee Retirement Income Security Act of 1974 ("ERISA"), Appraiser Independence Requirements, and the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"). Currently before the Court is Defendants' motion [99] to dismiss Plaintiff's Amended Complaint and, in the alternative, for a more definite statement, and Defendants' motion to strike certain exhibits from Plaintiff's Amended Complaint. For the reasons stated below, Defendants' motion to dismiss [99] is granted. Plaintiff's Amended Complaint is dismissed without prejudice. Plaintiff is given until August

17, 2018 to file a second amended complaint consistent with this opinion, if Plaintiff believes that she can overcome the deficiencies identified below. This case is set for further status hearing on August 22, 2018 at 9:00 a.m.

## I.    Background[1]

Plaintiff Lisa Parks ("Plaintiff") began working for Defendant Speedy Title & Appraisal Review Services ("STARS") in June 2012 as a real estate review appraiser. [96, at 3.][2] Defendant Anthony Greer served as Plaintiff's direct supervisor beginning in January 2013. [*Id.*] Defendant Karie Magedoff was the Director of Human Resources at STARS during Plaintiff's employment. [*Id.*] Defendants Greer and Magedoff worked out of STARS' office in Mount Laurel, New Jersey, while Plaintiff telecommuted from Chicago, Illinois. [*Id.*]

According to Plaintiff, when she began working at STARS, she was a good employee who received good evaluations along with Quality of Excellence Awards in 2012 and 2013. [*Id.*, at 3, 6.] Plaintiff also alleges that she was well-qualified for the position based on her prior work experience and advanced education. [*Id.*, at 2.] However, Plaintiff alleges that at some point during her tenure at STARS, her superiors (particularly Defendant Greer) began to harass her in various ways or to otherwise contribute to a hostile and unfair work environment that forced her to eventually resign her position as an appraiser in 2015.

According to Plaintiff, soon after she was hired in 2012, Defendant Greer threatened to give her more difficult assignments than other employees. Plaintiff thereafter received more

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Because Plaintiff is proceeding *pro se*, her pleading will not be held to the same stringent standard as those drafted by trained lawyers. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017).

[2] All citations to Plaintiff's Amended Complaint [96] are to the relevant page numbers or paragraphs in the "Supplemental Pages" that Plaintiff has attached to the court's standard amended complaint form.

assignments than other appraisers. [96, ¶¶ 18–21.] Plaintiff further alleges that Defendant Greer sent Plaintiff unnecessary copies of work-related e-mails to her personal e-mail account, which made her feel unsafe; did not refer to her awards in a professional manner; completed work for other employees but not for Plaintiff; and disciplined her for errors that were non-critical or not her fault. [*Id.*, ¶¶ 14, 24, 31, 40.] Defendant Greer also allegedly disciplined Plaintiff more frequently and more severely than other employees, and over time her performance evaluations stopped being as positive as they had initially been when she began her job at STARS. [*Id.*, ¶ 15.] Plaintiff alleges that another supervisor, Andrew Reisser, once threatened her in a meeting along with Defendant Greer and "spoke in a voice louder than normal" to her. [*Id.*, ¶ 4.] Plaintiff makes other general allegations of verbal threats and disciplinary actions by STARS employees, but does not specify what those threats were or who (besides Reisser and Greer) made such threats. [*Id.*, at 6–7.]

In 2014, Plaintiff received two corrective actions (one in August and one in December). [*Id.*, ¶¶ 6–9.] These corrective actions seem to be related to technical issues that Plaintiff faced in performing her job responsibilities. As a telecommuter, Plaintiff faced many technical difficulties in completing her work on the STARS system, affecting her work output. These technical issues were not properly addressed, however, and she was reprimanded in these corrective actions for not completing her work despite Defendant Greer's knowledge of these technical issues she encountered throughout her tenure. [*Id.*, ¶¶ 26–27, 33, 51.] While technical support employees would call Plaintiff in an attempt to address and fix these issues, they would often call her near or during her lunch hour. [*Id.*, ¶ 14.]

The August 2014 corrective action that she received via email stated that Plaintiff was no longer eligible for merit increases, promotions, or transfers. [*Id.*, ¶ 7.] Plaintiff was also denied

a raise during her 2014 performance review after she received these two corrective actions. [*Id.*, ¶¶ 15, 34.] According to Plaintiff, these corrective actions were retaliatory and part of the harassment that she faced at STARS.

Plaintiff makes various other allegations regarding her salary and benefits while she was employed as an appraiser at STARS. STARS paid Plaintiff less than her male "and possibly female" counterparts, despite her advanced experience and education. [*Id.*, ¶ 38.] Although other employees received overtime pay, Plaintiff was denied such overtime. [*Id.*, ¶¶ 38–39.] Plaintiff also had to work additional hours without pay in order to remain employed at STARS. [*Id.*, ¶ 32.] According to Plaintiff, she would have qualified for a better benefits plan and higher company contributions with a better salary. [*Id.*, ¶ 53.] Plaintiff was also issued an insurance policy by STARS, but STARS could not properly explain this policy to her. [*Id.*, ¶ 52.]

Plaintiff describes various other conditions of her employment that contributed to the hostile and threatening environment she faced while employed at STARS. Plaintiff maintains that she was not given a balanced workload as she was promised, and that at times she was given more assignments than other appraisers. [*Id.*, ¶¶ 18, 21.] Additionally, STARS managers continually insisted that she was an underwriter, rather than an appraiser, [*id.*, ¶¶ 2–5, 10–11, 29]; STARS took excessive deductions from her paycheck and lost one of her paychecks in 2015, [*id.*, at 2, ¶ 13]; Plaintiff often faced confusion about whether or not she needed to travel to New Jersey for training opportunities, and for one such training trip she was not reimbursed as quickly for her travel expenses as other employees, [*id.*, ¶¶ 25, 35–37]; and Plaintiff was forced to get a second internet contract at her home in order to work, although other employees were allowed to use their regular internet contract, [*id.*, ¶¶ 40–41].

Plaintiff reported at least some of these events to Defendant Magedoff in December 2014 and February 2015, including Defendant's Greer's treatment of her. [*Id.*, ¶¶ 16, 23.] Defendant Magedoff failed to discipline Defendant Greer appropriately, nor did she speak to Plaintiff about how to cope with the treatment she had received. [*Id.*, ¶ 57.] Plaintiff claims that she also made reports to the Illinois Department of Financial and Professional Regulations ("IDFPR"), the Illinois Department of Labor, and the New Jersey Board of Real Estate Appraisers, although she does not describe the timing or the contents of these reports. [*Id.*, at 5.] Plaintiff does allege that she spoke extensively with a representative of the IDFPR. The exact content of these conversations is unclear, but it seems that Plaintiff spoke to this representative about proper methods of recordkeeping and STARS's failure to follow these methods. [*Id.*, ¶¶ 1–6.] According to Plaintiff, she discussed contacting the IDFPR with her STARS supervisor Andy Reisser in July 2014. [*Id.*, ¶ 2.] Plaintiff also started the process of filing a complaint with the EEOC in December 2014, after receiving her second corrective action. [*Id.*, ¶ 9.] Plaintiff wrote to the EEOC again after Greer spoke to her in a "very unprofessional" manner in March 2015. [*Id.*, ¶ 31.] Based on the sum total of these events and the hostility that Plaintiff felt at her job, Plaintiff resigned from STARS on March 23, 2015. [*Id.*, ¶ 35.]

Plaintiff alleges that she is a member of a protected class because she is female and African American. [*Id.*, at 4.] She notes that she was the only African American employee in her department in 2014. [*Id.*, at 7.] According to Plaintiff, at least some of the disciplinary actions that she faced at STARS were motivated by her membership in these protected classes, as well as by her complaints about STARS both internally and to the IDFPR. [*Id.*, at 6–7.] Other such actions were, according to the Amended Complaint, "retaliatory" or otherwise related to the corrective actions that she had received. [*Id.*, ¶¶ 15, 34, 51.] Plaintiff had no choice but to leave

her position after this treatment became increasingly hostile and an IDFPR representative suggested to her that she resign. [*Id.*, at 7.]

Plaintiff filed the instant lawsuit against Defendants in February 2016 after receiving a Notice of Right to Sue letter from the EEOC in December 2015. Defendants moved to dismiss the complaint, [see 29], and the Court struck this motion without prejudice after granting Plaintiff's oral motion for leave to file an amended complaint [34]. Plaintiff filed her Amended Complaint in August 2017. [See 96.] In the Amended Complaint, Plaintiff brings claims for wrongful termination in violation of Title VII (Count I); discrimination in violation of Title VII and Title VI (Count II); retaliation in violation of Title VII (Count III); violation of FLSA (Count IV); violation of Section 1981 (Count V); violations of the IMWL and the EPA (Count VI); violation of the IWA (Count VII); violation of the CEPA (Count VIII); violation of ERISA (Count IX); violations of appraiser independence requirements (Count X); and violations of the Dodd-Frank Act (Count XI). Defendants again moved to dismiss the complaint or, in the alternative, for a more definite statement. [See 99.] Defendants also moved to strike Exhibits G and I from Plaintiff's Amended Complaint. [See *id.*] This motion is currently before the Court.

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v.*

*Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011). Pleadings filed by *pro se* litigants must be "liberally construe[d]" and are not held to the same stringent pleading standards as those filed by trained lawyers. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017).

III.    **Analysis**

Defendants have moved to dismiss Plaintiff's complaint in its entirety pursuant to Rule 12(b)(6). To the extent that Plaintiff has stated a valid claim, Defendants move for a more definite statement on those valid claims, setting forth the basis for each Defendant's liability and the facts supporting them. Defendants have also moved to strike Exhibit G and Exhibit I from the Amended Complaint. Because the Court concludes that Plaintiff has not stated a valid claim in her Amended Complaint, the Court need not address Defendants' motions for a more definite statement and to strike.

A.    **Title VII and Section 1981 Wrongful Termination and Discrimination Claims (Counts I, II, and V)**

Counts I and II of Plaintiff's Amended Complaint bring claims under Title VII[3] for discrimination on the basis of race, color, and sex, and Count V brings a claim under Section 1981[4] for discrimination on the basis of race. Because the analysis for discrimination claims under Title VII is identical to the analysis for discrimination claims under Section 1981, the Court will consider these claims together. See *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015).

### *1. Race and Gender Discrimination (Counts II and V)*

To state a Title VII discrimination claim under a disparate treatment theory, a plaintiff must adequately allege that she suffered an adverse employment action that was motivated by discriminatory animus. See *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016); *Porter v. City of Chi.*, 700 F.3d 944, 954 (7th Cir. 2012). "[A] materially adverse employment action is one which visits upon a plaintiff "a significant change in employment status." *Boss*, 816 F.3d at 917 (citation omitted). Such changes can involve the employee's current wealth, career prospects, or unbearable changes to job conditions that amount to constructive discharge. See *id*; *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014); *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000) ("For an employment action to be actionable, it must be a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" (citation omitted)). The Seventh Circuit has defined adverse employment actions "quite broadly" but has

[3] Title VII makes it unlawful for an employer to discriminate against any individual "because of such individual's race, color [or] sex." 42 U.S.C. § 2000e–2(a)(1).

[4] Section 1981 provides that "[a]ll persons * * * shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

explained that the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Porter*, 700 F.3d at 954 (citation and internal quotation marks omitted). "[N]ot everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Id.* (citation and internal quotation marks omitted); see also *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 406 (7th Cir. 2010) ("The idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." (citation and internal quotation marks omitted)).

Defendants argue that Plaintiff's discrimination claims must be dismissed because Plaintiff has failed to allege that she was subjected to an adverse employment action. According to Defendants, Plaintiff's Amended Complaint only contains allegations of "ordinary workplace grievances" and "petty slights" without any tangible job consequences. [See 100, at 4–6.]

The Court agrees with Defendants that Plaintiff's Title VII discrimination claim in Count II and Section 1981 discrimination claim in Count V both must be dismissed. The Amended Complaint largely focuses on petty workplace slights that do not represent "significant negative alteration[s] in the workplace." *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 988 (N.D. Ill. 2016). Many of Plaintiff's allegations focus on the two corrective actions that she received in 2014. These two corrective actions, without any other tangible consequences, do not constitute adverse employer actions for Title VII purposes. See *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010). And Plaintiff has not alleged that she suffered any kind of tangible job consequence in relation to these corrective actions.

The majority of the conduct by Defendant Greer and other STARS employees alleged in Plaintiff's Amended Complaint is exceedingly ordinary and brought no tangible consequences to Plaintiff's wealth or career prospects. For example, Plaintiff alleges that her supervisor Andrew Reisser sent her an email in July 2014 after the two had a meeting in which Reisser "spoke in a voice louder than normal" at her and insisted she was an underwriter not an appraiser. The email read, "It may have misspoken during out conversation. It is Advisory Opinions not FAQs." [96, ¶¶ 4–5.] This meeting and this email may have made Plaintiff uncomfortable or upset, but Plaintiff does not allege that anyone at STARS took any action against her in connection with this interaction. See *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 982 (7th Cir. 2008) (supervisor's comment about plaintiff's absences might have been offensive to the plaintiff, but did not amount to a materially adverse employment action). Similarly, Defendant Greer's isolated comments and discipline of Plaintiff, Plaintiff's unbalanced workload, Plaintiff's displeasure with technical support and the insistence that she was an underwriter rather than an appraiser all represent the kind of "petty" complaints that are not considered materially adverse for purposes of Title VII liability. See *Williams v. Univ. of Chi. Med. Ctr.*, 2014 WL 4724378, at *6 (N.D. Ill. Sept. 23, 2014) (comments during a staff meeting about Plaintiff's certifications and whether she was competent to perform her job were not materially adverse employment actions); *Gilhooly v. UBS Sec., LLC*, 772 F. Supp. 2d 914, 917–18 (N.D. Ill. 2011) (allegations that plaintiff was blamed for mistakes that did not exist or were made by others did not plausibly plead a materially adverse employment action); *Adam*, 210 F. Supp. 3d at 988 (allegations that plaintiff was screamed at and grabbed by other employees did not state a claim for discrimination because, while impolite, these actions did not change plaintiff's wealth or career prospects and therefore were not materially adverse).

Plaintiff does allege that she was not eligible for a merit pay increase or promotion after her first corrective action in August 2014, and that she was denied a raise during her 2014 performance review. [96, ¶¶ 7, 15, 34.] A denial of a wage increase may be an adverse employment action under Title VII. See *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007) ("[T]he denial of a raise—as opposed to missing out on something more transient, like a bonus—qualifies as an adverse employment action."); *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004) (the denial of a raise may be a materially adverse employment action "if a raise would have been an expected element of the employee's salary and its denial cuts the salary in real terms"); *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 654 (7th Cir. 2000) (the denial of a raise may be an adverse employment action for purposes of federal anti-discrimination laws); see also *Paxon v. Cty. of Cook, Ill.*, 2002 WL 1968561, at *4 (N.D. Ill. Aug. 23, 2002) (allegations that plaintiff was denied opportunity for promotion and advancement sufficiently alleged a materially adverse employment action). But the Amended Complaint is not clear as to whether she expected or was entitled to a raise or a promotion that was thereafter denied. Thus, Plaintiff's existing allegation regarding this denial does not meet Rule 8(a)'s pleading standard. See *Twombly*, 550 U.S. at 555.

Moreover, even if the Court were to consider these denials of a raise and promotion to be a materially adverse employment action, Plaintiff cannot state a claim for Title VII discrimination because Plaintiff has not alleged that the denial of a raise or promotion opportunities after the August 2014 corrective action she received was based upon either her race or her gender. At the Rule 12(b)(6) stage, this is not a stringent pleading requirement: "a complaint alleging [race or gender] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [her race or gender]."

*Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013)); see also *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (plaintiff adequately pled a Title VII claim when she alleged "which positions she sought and was denied, and she attributed the denial to sex discrimination.").

But Plaintiff has not made even a conclusory allegation that would link her membership in a protected class to her being denied an advancement opportunity and a pay increase. Plaintiff does, at certain points in her Amended Complaint, allege that Defendants actions were motivated by her race and by her gender. However, Plaintiff only makes these allegations with respect to the "petty slights" that are not sufficient to support a Title VII discrimination claim because they are not materially adverse employment actions. See [96, at 6] (after listing STARS's frequent discipline of Plaintiff, Plaintiff alleges that this frequent discipline was "racially motivated and because I am a female"); [*id.*, ¶ 41] (alleging Greer's insistence that Plaintiff purchase a second internet contract "is an example of discrimination based on sex and race"). In her allegations that she was denied a raise and promotions after her August 2014 corrective action, Plaintiff does not claim that these actions were discriminatory. See [96, ¶ 7] (alleging that statement in her corrective action that she was ineligible for merit increases, promotions, or transfers was "retaliatory"); [*id.*, ¶ 15] (alleging that when she was denied a raise in 2014, "Greer said STARS did not reward average work with pay increases"); [*id.*, ¶ 34] (again alleging that when Plaintiff was denied a raise during her 2014 performance review, Greer said "STARS did not reward average work with a pay increase"). Even accepting that allegations of being denied a raise and promotion suffice to plead that Plaintiff suffered a materially adverse action, Plaintiff does not allege that these raise and promotion denials were based on discriminatory animus. Without

such allegations, her claims based on these denials must fail. See *Schaetz v. Paper Converting Mach. Co. Inc.*, 2017 WL 2275005, at *2 (E.D. Wis. May 24, 2017) (calling the omissions of any allegation "that the harassment and intimidating behavior [plaintiff alleged] was on account of Schaetz' sex, race, ethnic origin, religion, or the other categories protected by Title VII" "fatal" to plaintiff's discrimination claims); *Parker v. Ill. Human Rights Comm'n*, 2013 WL 5799125, at *4 (N.D. Ill. Oct. 25, 2013) (dismissing Title VII discrimination claims where Plaintiff did not allege a link between her protected class and the adverse employment action). These claims fail because they do not put Defendants on notice as to what kind of discrimination Plaintiff exactly claims happened with this decision: for example, Defendants cannot be on notice as to whether this specific employment action was allegedly motivated solely on the basis of Plaintiff's race, solely on the basis of Plaintiff's gender, or on a combination of both. See *Concentra*, 496 F.3d at 782 (a complaint must contain enough facts to provide fair notice of the basis for a claim).

Therefore, Count II of the Amended Complaint (to the extent that this count is based on Plaintiff's allegations of Title VII discrimination) and Count V of the Amended Complaint are dismissed without prejudice.

### 2.     *Wrongful Termination (Count I)*

In Count I, Plaintiff purports to bring a Title VII claim against Defendants for wrongful termination. As Defendants point out, Plaintiff does not allege that STARS actually terminated her employment: instead, she alleges that she resigned from her position in March 2015 and that she was "forced" to do so by STARS supervisors' actions. [96, ¶¶ 1, 35.] The Court will therefore construe Count I as a claim for constructive discharge pursuant to Title VII. See *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 639 (7th Cir. 2009).

Constructive discharge can constitute an adverse employment action. A constructive discharge occurs where an employer "makes an employee's working conditions so intolerable that the [reasonable] employee is forced into an involuntary resignation." *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 536–37 (7th Cir. 1993) (quoting *Weihaupt v. Am. Medical Ass'n*, 874 F.2d 419, 426 (7th Cir. 1989)). In order to recover under a constructive discharge theory of discrimination, the plaintiff must show that (1) she was actually constructively discharged; and (2) that the constructive discharge resulted from her membership in a protected class. *Saxton*, 10 F.3d at 526; *Porter*, 576 F.3d at 639; see also *Gilhooly*, 772 F. Supp. 2d at 917 ("To plead constructive discharge, a plaintiff needs to show that his working conditions were so intolerable that a reasonable person would have been compelled to resign.") (internal quotation marks and citation omitted). Constructive discharge may take two forms: "(1) an employee quits due to alleged discriminatory harassment, which requires the employee to establish that his working conditions were even more egregious than that required for a hostile work environment or (2) when the employer acts in a manner that communicates to a reasonable employee that his employment will be terminated." *Michael v. United Parcel Serv. Freight, Inc.*, 2015 WL 3396678, at *8 (N.D. Ill. May 26, 2015) (citing *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008)).

Plaintiff has failed to state a claim for constructive discharge under Title VII. Plaintiff has not made any allegations that anyone at STARS communicated to her that her employment there would be terminated. And, as described above, Plaintiff has not sufficiently alleged that her work environment was intolerable to withstand a Rule 12(b)(6) motion. The Amended Complaint describes a work environment where she faced many technical issues with telecommuting, was disciplined by her supervisors more than necessary, and faced pushback

14

about her job title and responsibilities. Considering the totality of the circumstances that Plaintiff describes, and accepting all of her allegations as true, Plaintiff's experience at STARS simply does not represent anything sufficiently egregious to support a constructive discharge claim (or that would satisfy even the less-demanding standard for a hostile work environment claim).[5] *Cf. Alamo v. Bliss*, 864 F.3d 541, 550–51 (7th Cir. 2017) (considering the totality of circumstances alleged in plaintiff's complaint, plaintiff sufficiently stated a hostile work environment claim where he alleged two severe racial slurs directed at him along with other incidents of harassment by co-workers); *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015) (plaintiff stated a claim for a hostile work environment when she alleged "uniquely bad treatment" of herself and her daughter based on their religion, including social shunning and being screamed at by co-workers). Plaintiff does not describe the type of pervasive and targeted negative treatment and hostility that would cause a reasonable person to feel that she must leave her place of employment. See *Chapin*, 621 F.3d at 679 (noting that "[o]ne threat and raised voices would not rise to the level of a hostile work environment," and therefore would not support a constructive discharge claim); *Patton v. Indianapolis Public Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (plaintiff had no hostile work environment claim where she had alleged her immediate supervisor "treated her in a rude, abrupt, and arrogant manner," ignored her work-related suggestions, and subjected her to criticism after she took sick leave). And to the extent that Plaintiff generally alleges hostile and

---

[5] To state a Title VII hostile work environment claim, "a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on [a reason forbidden by Title VII]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). Although a plaintiff may establish a hostile work environment by showing that she has been subjected to severe or pervasive harassment, a "further showing" is necessary to establish a constructive discharge. *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 639 (7th Cir. 2009) (citing *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004)).

unfair treatment by her STARS supervisors, such general assertions unsupported by facts from which the Court could reasonably infer that Plaintiff did face such hostility cannot support her claim that she was constructively discharged. See *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (to adequately state a claim, a "plaintiff must give enough details about the subject-matter of the case to present a story that holds together").

Therefore, Plaintiff's claim for wrongful termination in Count I of the Amended Complaint is dismissed against all Defendants without prejudice.

### B.    Title VII Retaliation Claim (Count III)

In Count III, Plaintiff brings a claim for retaliation under Title VII.   "Pleading a retaliation claim under Title VII requires the plaintiff to allege that 'she engaged in statutorily protected activity and was subjected to an adverse employment action as a result.'" *Carlson*, 758 F.3d at 828 (quoting *Luevano*, 722 F.3d at 1029).   Defendants argue that Plaintiff cannot state a retaliation claim because she has not alleged that she engaged in a protected activity and, even if she had sufficiently alleged that she did so, she has not plausibly alleged that any adverse employment action was caused by such protected activity.   [See 100, at 7.]

Title VII prohibits discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter."   42 U.S.C. § 2000e-3(a); see also *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083–84 (7th Cir. 2008) (noting that employees are protected against retaliation "only when they reasonably believe that the activities they oppose violate Title VII").   A plaintiff alleging illegal retaliation on account of protected conduct must specifically identify the protected activity. *Carlson*, 758 F.3d at 828 (citing *Concentra*, 496 F.3d at 781).   In her claim for Title VII retaliation, Plaintiff focuses on her conversations with a representative of the IDFPR.   See [96, ¶¶ 28–31]; see also [*id.* at 7] ("In 2014, STARS retaliated

16

with verbal threats and disciplinary actions after discussions with IDFPR about record-keeping and a computer switch.")  However, these conversations, as Plaintiff has described them, do not constitute activities protected by Title VII.  The content of Plaintiff's communications with this agency is unclear, but they seem to be about compliance with recordkeeping requirements and her need to get a new computer rather than about any type of discrimination occurring at STARS.  [See *id.*, ¶¶ 1–9, 28.]  Plaintiff has given no indication in any of her allegations that these reports to the IDFPR concerned anything that she reasonably believed was a Title VII violation.  Therefore, these communications were not statutorily protected expressions.  See *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007) (where plaintiff's complaints "had nothing to do with" discrimination, they were not protected expressions for federal antidiscrimination purposes); *Kirley v. Bd. of Educ. of Maine Township High Sch. Dist. 207*, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 20, 2013) (email complaining about activity not unlawful under the ADEA did not constitute statutorily protected activity under the ADEA).[6] Plaintiff cannot state a Title VII retaliation claim based on the discussions with the IDFPR set out in her complaint.

Moreover, even if Plaintiff's reports to the IDFPR were considered protected activities, Plaintiff's Title VII retaliation claim still would fail because she has not adequately alleged that, as a result of these conversations, she suffered an adverse employment action.  The standard for adverse actions in the context of retaliation claims is not as high as the standard for discrimination claims.  "In the retaliation context, the challenged adverse action need not be one that affects the terms and conditions of employment, but it 'must be one that a reasonable

---

[6] Plaintiff also alleges generally that she engaged in the protected actions of "consulting attorneys, * * * discussions with the Illinois Department of Labor (IDOL), the New Jersey Board of Real Estate Appraisers, and other agencies."  [96, at 5.]  However, Plaintiff does not describe what she discussed with these agencies, and therefore stating that these discussions happened does not sufficiently allege that Plaintiff engaged in any protected activity by having them.  See *Kodl*, 490 F.3d at 563.

employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.'" *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (quoting *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007)). However, "petty slights and minor annoyances * * * generally will not create such deterrence." *Henry v. Milwaukee Cty.*, 539 F.3d 573, 587 (7th Cir. 2008).

As discussed in connection with her Title VII discrimination claims, most of Plaintiff's allegations only describe such "petty slights and minor annoyances," including being disciplined excessively, not being reimbursed quickly, and not having a balanced workload, that would not dissuade a reasonable employee from reporting harassment or discrimination. See *Cain v. Locke*, 483 F. App'x 276, 281 (7th Cir. 2012) (district court correctly granted summary judgment to employer on Title VII retaliation claim because "the fact that [plaintiff's] supervisors may have been rude or intimidating does not elevate these [complained-of] incidents to the level of materially adverse actions"); *Henry*, 539 F.3d at 587 (alleged incidents, including early morning phone calls and excessive discipline for minor infractions, would not dissuade reasonable employees from engaging in protected activities and thus did not constitute retaliation); *MacGregor v. DePaul Univ.*, 2010 WL 4167965, at *6 (N.D. Ill. Oct. 13, 2010) (plaintiff, a sociology instructor, failed to state a Title VII retaliation claim because she had not adequately alleged why the removal of her name from a collection of photographs was a materially adverse action rather than a trivial one). Plaintiff's Amended Complaint repeatedly states that she suffered from retaliation, but the only facts supporting this allegation do not describe an adverse employment action that would dissuade an employee from engaging in protected conduct.

As discussed in connection with Plaintiff's discrimination claims, the most serious actions that Plaintiff alleges she faced include the denial of a raise during her 2014 performance

review and the statement in her August 2014 corrective action that she was ineligible for promotions, transfers, or merit pay increases. "The Seventh Circuit has [] held that denial of a raise is an adverse employment action" for retaliation claims. *Smuk v. Specialty Foods Grp., Inc.*, 2016 WL 3742849, at *9 (N.D. Ill. July 13, 2016) (citing *Farrell v. Butler Univ.*, 421 F.3d 609 (7th Cir. 2005); *Hunt*, 219 F.3d at 654). Plaintiff generally pleads that these actions were "retaliatory" and that they occurred close in time to harassment that she faced. [See 96, at 6, ¶¶ 7, 15.] But Plaintiff does not list these actions in her retaliation count, nor does she allege facts explaining how these actions were done to retaliate against her or whether they were connected in any way to her conversations with the IDFPR.[7] Thus, Plaintiff has failed to state a claim for Title VII retaliation, and Count III of the Amended Complaint is dismissed against all Defendants without prejudice.

### C. Title VI Claim (Count II)

Plaintiff brings a claim for discrimination under Title VI in Count II. [See 96, ¶¶ 18–27.] Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.

---

[7] The Court notes that Plaintiff also describes in her Amended Complaint two activities in which she engaged that are undoubtedly statutorily protected: the filing of an EEOC charge and reporting harassment internally at STARS. See *Huri*, 804 F.3d at 833; *Luevano*, 722 F.3d at 1029. However, Plaintiff's allegations are too vague to support a retaliation claim based on these activities. While the timeline is unclear, Plaintiff's Amended Complaint indicates that she spoke with Defendant Magedoff and filed her EEOC charge only *after* the August 2014 corrective action and *after* she was denied a raise during her 2014 performance review. [See 96, ¶ 9] (indicating Plaintiff spoke to HR and began her formal EEOC charge in December 2014, although noting that "surveillance and write-ups at work" continued afterwards); [*id.*, ¶ 16] (stating that Plaintiff spoke with Magedoff in February 2015); [*id.*, ¶ 23] (indicating Plaintiff spoke with Magedoff in August 2014 and again in February 2015 about the corrective actions); [*id.*, ¶ 31] (indicating that Plaintiff spoke to the EEOC in March 2015); [*id.*, ¶ 34] (indicating that Plaintiff's 2014 performance review occurred on March 3, 2015, approximately three weeks before she resigned). Thus, to the extent Plaintiff intended to include these activities in her retaliation claim, as currently pled Plaintiff cannot state a Title VII retaliation claim based on her reporting to Defendant Magedoff and the EEOC.

§ 2000d.  To bring a claim under Title VI, "the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program."  *Sifuna v. Accreditation Council of Pharmacy Educ.*, 2017 WL 5891224, at *7 (N.D. Ill. Nov. 28, 2017) (quoting *Simpson v. Reynolds Metal Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980)).  In the employment discrimination context, Title VI only provides a judicial remedy for such discrimination by institutions receiving federal funds if "(1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid."  *Ahern v. Bd. of Educ. of the City of Chi.*, 133 F.3d 975, 978 (7th Cir. 1998) (citation omitted).  Plaintiff's Amended Complaint contains no allegations that STARS participates in any federally funded program, nor does she allege that she is the intended beneficiary of any such program.  Therefore, Plaintiff fails to state a claim under Title VI in Count II of the Amended Complaint and this claim is dismissed against all Defendants without prejudice.[8]

### D.    FLSA and IMWL Claims (Counts IV and VI)

Plaintiff brings claims for violations of both the FLSA and the IMWL based on a failure to receive overtime pay.  The same legal analysis applies to claims brought under both the FLSA and the IMWL.  See *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993); *Hughes v. Scarlett's G.P., Inc.*, 2016 WL 454348, at *6 (N.D. Ill. Feb. 5, 2016). Defendants argue that Plaintiff has failed to state a claim under either statute.  [See 100, at 8–9.]

---

[8] In her response to Defendants' motion to dismiss, Plaintiff asks the Court to "help confirm if the defendants receive federal financial assistance."  [105, at 8.]  But the Court cannot undertake research for one side of a case in litigation.  See, *e.g.*, *Brown v. Ill. Dep't of Human Servs.*, 2017 WL 4570316, at *2 (N.D. Ill. July 11, 2017) ("[C]ourts are not obliged to craft arguments or perform necessary legal research for pro se litigants to cure substantive deficiencies.") (citing *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001)).

Both the FLSA and the IMWL require employers to pay employees overtime wages of one and one-half times their regular hourly wages for hours worked over forty hours in one week. 29 U.S.C. § 207(a)(1); 820 ILCS 105/4a(1). To state a claim for failure to pay overtime, "a plaintiff must sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of forty hours." *Silver v. Townstone Fin., Inc.*, 2015 WL 1259507, at *2 (N.D. Ill. Mar. 17, 2015) (citation omitted). Here, Plaintiff generally alleges that she worked overtime without sufficient pay. [96, ¶¶ 32, 39.] She also states her dates of employment and her approximate salary during that timeframe. [*Id.*, ¶ 38.] However, Plaintiff does not allege how many hours she worked in a week (and whether or not this was over forty hours) or how many overtime hours she worked without being paid the proper salary. Without such allegations, Defendants are not on notice of the factual basis for her FLSA claim. See, *e.g.*, *Hughes*, 2016 WL 454348, at *5 ("[C]ourts in this district have dismissed complaints which merely recite the elements of an FLSA claim without supporting factual detail."); *Labriola v. Clinton Enter. Mgmt., LLC*, 2016 WL 1106862, at *3 (N.D. Ill. Mar. 22, 2016) (allegations that plaintiff worked eight to ten hours per day without pay, and may have worked overtime, were "insufficient to establish a claim for unpaid overtime compensation"); *Kwan Bom Cho v. GCR Corp.*, 2013 WL 675066, at *2 (N.D. Ill. Feb. 22, 2013) (without specific detail regarding how many hours plaintiffs had worked and what they were paid, plaintiffs failed to state FLSA claim); *Wilson v. Pioneer Concepts, Inc.*, 2011 WL 3950892, at *2–3 (N.D. Ill. Sept. 1, 2011) (collecting cases and dismissing overtime claim where plaintiff failed to allege when the overtime hours were worked or how many overtime hours she worked without proper compensation). Therefore, Count IV of Plaintiff's Amended Complaint is dismissed without

prejudice, and Count VI of Plaintiff's Amended Complaint to the extent it is based on the IMWL is dismissed without prejudice.

### E.    EPA Claim (Count VI)

In Count VI, Plaintiff also brings a claim for violation of the Equal Pay Act.  To state a claim for an Equal Pay Act violation, Plaintiff must allege that:  (1) different wages were paid to employees of the opposite sex; (2) the employees are performing equal work which requires equal skill, effort, and responsibility; and (3) the employees have similar working conditions. *Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 912–13 (7th Cir. 2002) (citing *Fallon v. Ill.*, 882 F.2d 1206, 1208–09 (7th Cir. 1989)).  Defendants argue that Plaintiff has failed to allege all three elements.  [See 100, at 9.]

The Court agrees.  Plaintiff alleges that she was paid less than her "male and possibly female counterparts."  [96, ¶ 38.]  By alleging that she was paid less than both male and female coworkers, Plaintiff has failed to allege the first element of an Equal Pay Act violation.  See *Markel*, 276 F.3d at 912; *Lynch v. City of Chi.*, 2013 WL 4506886, at *3 (N.D. Ill. Aug. 23, 2013) (failure to allege that differences in benefits were based on gender doomed plaintiffs' claim for an EPA violation).

Even if Plaintiff had alleged that she was paid differently than her male coworkers, she has not alleged that any of her male coworkers were performing equal work, or that they were working under similar conditions.  The only employee she identifies is another appraiser, Fred Kessler, who did not have to purchase another internet contract for his work, while Plaintiff did have to do so.  [96, ¶ 41.]  But Plaintiff does not state how this requirement of purchasing an internet contract fits into her compensation scheme.  She also does not include in her Amended Complaint any allegations about Kessler's responsibilities at work and whether he performed

similar work to Plaintiff. Plaintiff merely uses the term "counterpart" in her EPA claim without providing any more detail about who these counterparts are, what kind of work they performed, or how that work compared to her own. Without such detail, Plaintiff's claim under the EPA fails. Therefore, the remainder of Count VI of the Amended Complaint, to the extent it is based on an EPA violation, is dismissed without prejudice.

F.      IWA Claim (Count VII)

Plaintiff brings a claim for a violation of the IWA in Count VII. The purpose of the IWA is "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers." *Young v. Alden Gardens of Waterford, LLC*, 30 N.E.3d 631, 654 (Ill. App. Ct. 2015). Specifically, under the IWA, an employer may not retaliate against an employee:

- "who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation," 740 ILCS 174/15(a);

- "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation," 740 ILCS 174/15(b);

- "for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation," 740 ILCS 174/20;

- through an act or omission "materially adverse to a reasonable employee" because "of the employee disclosing or attempting to disclose public corruption or wrongdoing," 740 ILCS 174/20.1; or

- by threatening "any employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act," 740 ILCS 174/20.2.

Defendants argue that the Amended Complaint fails to allege that Plaintiff has whistleblower status under the IWA. [See 100, at 10.]

Plaintiff has failed to state an IWA claim because she has failed to plead that she would qualify for IWA protection. The Court notes that Plaintiff has not cited to any specific provision of the IWA that she believes Defendants have violated. However, Count VII of the Amended Complaint is based on Plaintiff's filing of the instant lawsuit in the Northern District of Illinois, which would bring her claim under 740 ILCS 174/15(a). Plaintiff alleges that some employment records she requested from Defendants have been withheld or delayed in some way, and that a denial of rehire was entered into her employee records. [See 96, ¶¶ 42–46.] Plaintiff filed the instant lawsuit in February 2016, however, almost a year after she resigned from her position at STARS. Therefore, nothing that happened while Plaintiff was employed at STARS could have been in retaliation for the instant lawsuit.[9] Count VII of Plaintiff's Amended Complaint is thus dismissed without prejudice.

### G. CEPA Claim (Count VIII)

In Count VIII, Plaintiff brings a claim for violation of CEPA, a New Jersey state statute. This statute protects from retaliatory action an employee who

> Objects to, or refuses to participate in any activity, policy, or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law * * *; (2) is fraudulent or criminal * * *; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

*Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 159 (3d Cir. 2017) (citing N.J. Stat. Ann. § 34:19-3(c)). To state a claim for a CEPA violation, a plaintiff must allege that (1) she reasonably believed that her employer's conduct "was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;" (2) she was a whistleblower; (3) she was

---

[9] To the extent that Plaintiff intends to base her IWA claim on her reporting to the IDFPR about STARS' corporate recordkeeping, the descriptions of what she reported are so vague that the Court cannot determine whether what she reported "discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). Thus, Plaintiff cannot state an IWA claim using these allegations because they are too vague to raise the possibility of relief above the "speculative level." *Concentra*, 496 F.3d at 776.

subject to an adverse employment action; and (4) a "causal connection exists between the whistle-blowing activity and the adverse employment action." *Southward v. Elizabeth Bd. of Educ.*, 2017 WL 111924, at *4 (D.N.J. Jan. 11, 2017) (internal quotation marks and citations omitted). Furthermore, to state a CEPA claim, a plaintiff must identify "a law, rule, regulation, or clear mandate of public policy" that supports the claim, as well as "unacceptable practices in the defendant employer's business" that contravene that law or rule. *Trzaska*, 865 F.3d at 159–60 (quoting *Hitesman v. Bridgeway, Inc.*, 93 A.3d 306, 321 (N.J. 2014)).

Plaintiff's CEPA claim fails because she has not identified the law, rule, regulation, or public policy that supports her claim. Her allegations in Count VIII relate to the internal disciplinary actions that she received, but do not allege any rule that this violates, nor does she allege that she was a whistleblower regarding any of these activities. The only law that Plaintiff references is a New Jersey law stating that STARS "should have told appraisers about office closings." [96, ¶ 49.] But she does not identify the law to which she refers, nor does she state that she complained about STARS's failure to follow this law and suffered an adverse employment action as a result. Thus, Defendants cannot be on notice of what she claims their CEPA violation is. As such, Plaintiff's CEPA claim in Count VIII of the Amended Complaint is dismissed without prejudice.

### H.    ERISA Claim (Count IX)

Plaintiff brings a claim for violation of ERISA based on an insurance policy that STARS issued to her that STARS could not properly explain to her. [96, ¶ 52.] Plaintiff also alleges that she would have qualified for a better benefits plan with a proper salary and benefits from STARS. [*Id.*, ¶ 53.]

ERISA is a statute enacted by Congress to "'protect * * * the interests of participants in employee benefit plans and their beneficiaries'" by "setting out substantive regulatory requirements for employee benefit plans and * * * 'provid[ing] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)). ERISA is a "comprehensive and reticulated statute." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citation omitted). Plaintiff has not included in her Amended Complaint which part of this comprehensive statute that Defendants have allegedly violated or how they have violated it with regard to her insurance policy or benefits plan. Therefore, Plaintiff's allegations in Count IX of the Amended Complaint are insufficient to put Defendants on notice of her claim, and Count IX is dismissed without prejudice.

## I.     Appraiser Independence Requirements Claim (Count X)

In Count X, Plaintiff brings a claim for violations of "appraiser independence requirements." Her allegations in this claim touch on her lower performance reviews that prevented her promotion at STARS; Defendant Magedoff failing to discipline Defendant Greer for his treatment of Plaintiff; Plaintiff's being assigned more difficult work than other employees; and unspecified actions that Defendants Magedoff and Greer took to stop Plaintiff from contacting regulatory agencies. [See 96, ¶¶ 56–59.] Plaintiff does not state what these appraiser independence requirements are or how Defendants' actions violate them.[10] Therefore,

---

[10] As Defendants point out, Plaintiff may be referring to 15 U.S.C. § 1639e, a federal statute entitled "Appraisal independence requirements." Section 1639e(a) makes it unlawful, "in extending credit or in providing any services for a consumer credit transaction secured by the principal dwelling of the consumer, to engage in any act or practice that violates appraisal independence." However, Plaintiff has not alleged that any consumer credit transaction with which she was involved violated appraisal independence, meaning § 1639e does not apply to her claims. See *Warren v. JPMorgan Chase Bank, N.A.*, 2015 WL 11120693, at *2 (D. Ariz. June 4, 2015) (where plaintiff alleged that he was hired as an independent appraiser and defendant had failed to pay him, plaintiff had no claim under § 1639e). All of

Plaintiff has failed to state a claim in Count X of the Amended Complaint, and Count X is dismissed without prejudice.

### J. Dodd-Frank Claim (Count XI)

In Count XI, Plaintiff brings a claim for a Dodd-Frank violation. According to Plaintiff, the Dodd-Frank Act states that appraisers should be paid "reasonable and customary fees," but she was not paid in line with her qualifications. [See 96, ¶ 61.] Plaintiff does not cite to any particular portion of Dodd-Frank, but 12 C.F.R. § 1026.42, a federal regulation promulgated by the Consumer Financial Protection Bureau, states that "[i]n any covered transaction, the creditor and its agents shall compensate a fee appraiser for performing appraisal services at a rate that is customary and reasonable for comparable appraisal services performed in the geographic market of the property being appraised." 12 C.F.R. § 1026.42(f)(1). Even assuming that this is what Plaintiff references, and assuming that a private right of action for a violation of this regulation exists, Plaintiff makes no allegation that she was involved in a "covered transaction," defined as an "extension of consumer credit that is or will be secured by the consumer's principal dwelling," 12 C.F.R. § 1026.42(a)(2), for which she would need to be paid a fee. Thus, Plaintiff's claim in Count XI of the Amended Complaint is dismissed without prejudice.

---

Plaintiff's allegations instead relate to the harassment that she allegedly suffered while employed at STARS.

## IV.      Conclusion

For the foregoing reasons, Defendants' motion to dismiss [99] is granted.  Plaintiff's Amended Complaint is dismissed without prejudice.  Plaintiff is given until August 17, 2018 to file a second amended complaint consistent with this opinion, if Plaintiff believes that she can overcome the deficiencies identified above.  This case is set for further status hearing on August 22, 2018 at 9:00 a.m.

Date: July 11, 2018

_____
Robert M. Dow, Jr.
United States District Judge